## Case No. 15,248.

UNITED STATES v. GRASSIN.

[3 Wash. C. C. 65.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1811.

NEUTRALITY LAWS—AUGMENTING FORCE OF WAR VESSEL—REPAIRING GUN CARRIAGES.

1. Indictment, for an illegal augmentation of the force of a French privateer, by raising or otherwise altering the gun carriages.

2. The offence consists, in increasing, or augmenting, (or being concerned in so doing,) the force of any belligerent vessel, which was armed at the time of her arrival in the United States, by adding to the number or size of her guns prepared for use, or by the addition to her force, of any equipment solely applicable to war.

3. Raising or lowering the carriages, or cutting away the decayed wood in them, and replacing them with sound wood, by which they are rendered fit for use, is increasing the force of the vessel, by an equipment solely applicable to war, and is expressly within the words and meaning of the act of congress.

The defendant [Alexis Grassin], the commander of a French cruiser, called the Diligent, belonging to a subject of France, a Mr. Guyon, domiciliated at New-York, arrived at this port in April or May last. The defendant reported himself to have come in, in distress, and applied to the custom-house, and obtained a permit to land her cargo, guns, &c., and to repair. The cargo, and other articles mentioned in the application for a permit, were placed under the care of a custom-house officer; but the eight gun carriages hereafter mentioned, were not enumerated in that paper, though the eight guns were. It appeared, in evidence, that this vessel was fitted out in France—that she was chased by a British ship of war, and in order to lighten herself, threw all her guns overboard, except one long six-pounder. She afterwards fell in with a British letter-of-marque, from which she took out eight 12-pound carronades, with their carriages; and after keeping them mounted on deck for three or four days, they were put into the hold, where they remained when she came to this port. Before the repairs of the vessel were completed, these gun carriages were sent on shore, to a Mr. Seguin, the carpenter employed in repairing the vessel, who added about from 4½ to 7½ inches of new wood to them, so as to raise them, in order to fit the port holes, as was contended, and proved, by witnesses on the part of the prosecution, but contradicted by the defendant's witnesses; viz. Seguin and his workmen, who swore, that the carriages were not raised, but merely, that the decayed parts were cut away, and replaced by new wood. The carriages, being thus altered, were returned on board the Diligent, but being discovered by some of the custom-house officers, they were relanded, and

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

the Diligent sailed without them. It was very fully in proof, that the guns upon the carriages, as they were originally, could not be fought through the port holes of the Diligent, and that it was necessary to raise them; although, one of the mariners swore, that they could be fought, and that they were fired to bring vessels to, during the few days they were mounted. It appeared, that the defendant was sick and confined to his room, during the greatest part of the time that these repairs were making; and that the owner was here nearly the whole time, and acted in relation to the repairs.

WASHINGTON, Circuit Justice (charging jury). The first question is, whether an addition made to gun carriages, either by raising, or otherwise altering them, is an offence, within the fourth section of the act of congress of June 5, 1794 [1 Stat. 383]. It is admitted, that the addition of entire new gun carriages is an augmentation within the law; but the alteration of old carriages is denied to be so. To the court, it seems, that nothing can be more plain than the meaning of this section. The offence consists, in increasing, or augmenting, or procuring, or being knowingly concerned, in increasing, or augmenting, the force of any belligerent vessel, which was armed at the time of her arrival within the United States, by adding to the number or size of her guns, prepared for use; or by the addition thereto, (that is to her force,) of any equipment, solely applicable to war. Suppose, then, that a vessel should arrive here, armed with twenty muskets, in complete order, and an equal number in her hold, but without locks, or otherwise useless—we ask, what would be her force, in guns prepared for use? The answer is obvious twenty muskets; since the other twenty, not being prepared for use, can constitute no part of her force. But, if the other twenty are prepared for use, by adding locks, is not her force, then, forty guns prepared for use? The locks are an equipment solely applicable to war, and then the whole case is made out. For, the force of the vessel has been increased or augmented, by the addition to the guns prepared for use, by an equipment solely applicable to war. In like manner, if the vessel has but one cannon mounted and prepared for use, and other cannon, say eight, in her hold, dismounted, or on carriages too rotten, or too high, or too low to be used, her force is but one cannon. If, by raising or lowering the carriages, or replacing the decayed, by sound wood, they are rendered fit for use, her force then becomes increased or augmented to nine cannon, prepared for use, and this, by an equipment solely applicable to war.

The second question is, whether the gun carriages of this vessel were so altered, as to increase, or augment her force? One witness has sworn, that the guns could be effectually used on the gun carriages as they were. You will judge, from the height of the port holes, and of the carriages, whether this was possible. That witness is contradicted on this point, by others examined in support of the indictment. Whether they were raised or not, is for you to determine; the witnesses being precisely at variance as to this point. But, it is proved by the defendant's witnesses, that the carriages were decayed, and were repaired by cutting away those parts, and substituting sound wood. It is, therefore, of no consequence, whether the sound wood which was put on, raised the guns or not; if, by the addition or substitution of it, for that which was decayed, these guns were prepared for use, so as to augment the force of the vessel, beyond what it was at her arrival. If nothing was done but what might well have been done without; it could not be said, that her force was augmented, by the addition of the equipment—quite otherwise, if the addition or alteration was necessary, in order to prepare the eight carronades for use. On this point, therefore, you must decide according to the evidence.

The third point is peculiarly a subject for your consideration, being a question of fact merely. It is, whether the defendant procured, or was knowingly concerned, in the addition or alteration that was made in the gun carriages? Prima facie, every presumption is against the commander of a vessel, in such a case. It is scarce credible, that such important operations in respect to the armament of a vessel, should be undertaken by any person, without the orders of the commander. In addition to this, the omitting to mention these carriages, in the application to the custom-house for a permit to land, is calculated to excite suspicion, that some alterations were intended; because, if they had been mentioned, they would have been placed under the care of a custom-house officer, whose duty it would have been, to prevent such alterations from being made. That the defendant knew of these alterations, is strongly contended for upon the evidence of the marshal; who swore, that after the arrest of the defendant, he stated to him that the intention was only to remove the decayed timber, and to substitute new. But, whether he spoke of his own intention, or of those who during his sickness had acted in the business, is by no means clear. In this case, the general presumption above mentioned is a good deal weakened, from the circumstance, that the owner was in Philadelphia during the whole time that these repairs were going on, and that during the greatest portion of that time, the defendant was sick and confined to his room. His knowledge of what was going on, were this fully proved, would not be sufficient to fix him with the offence, unless he was in some way concerned in it. Upon this point, it is proper you should be satisfied. We have only to add, that if from the publications which were spoken of at the

bar, you have received impressions unfavourable to the defendant, on account of acts done by him, unconnected with the offence for which he is now tried, we feel the fullest confidence that you will not suffer them to influence your feelings or your judgment; for, even if the charges made against him were proved. which in this case they were not, and could not be, they have nothing to do with the issue you are sworn to try.

The jury could not agree in this case, and frequently applied to the court to discharge them. The court informed the jury that they had not the power legally to discharge them, without the assent of the district attorney, and the defendant's counsel. At length, after keeping the jury together for some time, this assent was granted by both sides, the court agreeing to try the cause again this term, and the jury were accordingly discharged.