## SUPREME COURT—IN BANCO.

*Allen, Ch. J., Davis, J.*

### THE KING *vs.* PAAKAULA AND KAHAULIKO.

A MAJORITY of the COURT may CONSTITUTIONALLY hear causes in Banco. EXCEPTIONS in criminal causes lie from the CIRCUIT COURTS. ADMISSION OF THE EVIDENCE of a boy who said he "did not know the result if he testified falsely" is correct, if the Court were satisfied of his belief in God and in his accountability. It is not error to admit improper evidence if it is afterwards RULED OUT. The COMPETENCY of CONFESSIONS is for the Court to decide. The BURDEN OF PROOF is on the defence to show inducements. Prisoners may be INDICTED JOINTLY for crime. CONFESSION before a Magistrate will be excluded "if made in consequence of a previous threat or promise by a person who may be supposed to have some authority or influence."

By the Court.

A motion was made a few days ago for an assignment of a time to hear an argument on the exceptions and a motion for a new trial in this case, and a day was assigned. In the meantime* occurred the lamented death of our highly esteemed First Associate Justice, and now the counsel who filed the exceptions, and made the motion for a new trial, moves the Court for a "stay of execution of the sentence until such time as a full bench can be procured for the hearing and argument of the exceptions and motion for a new trial." And the first question which arises is : Is it competent for the Court, constituted as it now is, to make judicial decisions ?

The Constitution expressly declares that decisions of the Supreme Court, when made by a majority of the Justices

---

* Judge ROBERTSON died suddenly at Waianae, Oahu, while on a trip for health and recreation, March 12th, 1867.

The King *v.* Paakaula and Kahauliko.

thereof, shall be final and conclusive between the parties. A majority of the Court are now sitting, and if they concur, the decision is final and conclusive. It is exceedingly desirable ·for the Court to be full, for the benefit of advice and counsel ; but it is an inevitable law that vacancies will occasionally occur. And has the opinion ever been adopted by any Court that their duties ceased, and the judicial business of the Court was suspended for this cause ? It is very often the case that a lawyer in full practice, and who has been counsel in many important cases pending, is appointed a Justice of the Supreme Court. In these cases he can not sit, but it is a new doctrine that a decision can not be had because the bench is not full. In case of the illness or unavoidable absence of a Justice of the Court, the same consequences would follow. No such power is vested in a single Justice to defeat all legal proceedings by his absence. The only question is : Is there a majority of the Court present ?

But the counsel contend that if a majority of the Court are sufficient as a general principle, in this case, as one of the Court presided at the trial, his incompetency renders the Court incomplete,.and constitutionally disqualified for business. By the 820th section of the Civil Code it is provided that no judge shall sit alone on an appeal or new trial in any case in which he may have given a previous judgment. This is certainly a very proper provision of the law, and it does not conflict with the position taken by the Court. It only provides that he shall not sit alone. It is as much his duty to be present and give to the Court his counsel and advice, as if he had not given a previous judgment or opinion. It is the duty of all judges to revise carefully their opinions ; and one fitted for his duties will be happy to have his own views and opinions corrected, if in error. As the Constitution provides that a majority of the Court may give decisions final and conclusive upon all parties, and as the laws make no provision against the sitting of a judge on a case on ap-

The King *v.* Paakaula and Kahauliko.

peal, or new trial, who has given a previous judgment in the
same case, excèpt that he shall not sit alone, we are of
opinion that as a majority are now present, the Court are
constitutionally qualified for judicial duties, and therefore the
motion of the counsel for the prisoners is denied.

The Attorney General contends that this Court has no
power to consider exceptions in criminal cases which have
been tried in a Circuit Court, and we are of opinion that this
question should be considered in this connection, for if the
position taken is sound it is an end of the present investiga-
tion.

By the Constitution the judicial power of the Kingdom is
vested in a Supreme Court and such inferior courts as the
Legislature may from time to time establish.    The Supreme
Court has jurisdiction in all cases in law and equity, civil or
criminal, and in all admiralty and maritime cases, whether
brought before it by original writ, by appeal or otherwise.
The Court has the power to prevent and correct errors and
abuses of all courts of inferior jurisdiction, when no other
remedy is expressly provided.    The Court has power to
make rules for conducting its business.    The jurisdiction is
vested in the Supreme Court over all cases, whether civil or
criminal, no matter whether brought before it by appeal or
otherwise.    The case is submitted to us by exceptions, and
the Court are of the opinion that it comes within the express
powers of the Court given by the Civil Code, to consider
them, and that they would be violating a great public duty
to refuse to do so.    These exceptions are legitimately before
this Court by the express terms of the Civil Code, which
makes it the duty of this Court to correct the errors of all
courts of inferior jurisdiction.    This case was tried by the
Circuit Court of Hawaii, which is a court of inferior jurisdic-
tion, and the counsel for the prisoners alleges error in the
ruling of that court, and brings it before this Court, by ex-
ceptions, for correction.    Is it not the express duty of the

Court to consider them ?   In examining the chapter of the
Civil Code which defines the powers of the Supreme Court,
it will be seen that they can entertain any case in the admin-
istration of the laws where parties have been before a court
of inferior jurisdiction, and desire the opinion of the highest
tribunal, unless otherwise especially provided for.   This is
the express right of the party.   These general powers were
given to prevent the necessity of making special provisions,
which would, necessarily, have been numerous.   This is a
construction which has always been given to the Constitution
and laws establishing the courts ; and we regard it as sound,
not only in spirit, but that it is in accordance with the ex-
press terms of the law.   The power of this Court to correct
the errors of inferior courts is ample by the terms of the
Code, and it has been the practice which the Court has al-
ways recognized, and which they were authorized so to do
by a general provision of law, to consider exceptions to the
opinions and decisions made by a circuit court.   We are of
opinion, therefore, that the Court is legally constituted and
qualified for the duties imposed upon it, and these exceptions
were properly allowed by the presiding Judge of the Circuit
Court, and that it is our duty to consider and adjudicate upon
them.   [Civil Code, Sections 817, 820, 829, 830, 833, 836].

The first exception made by the counsel for the prisoners
is, that the testimony of the boy Kaholowaa should not have
been admitted because he said, "I do not know what the
result would be if I should testify falsely."   If this was the
entire statement of the examination, the Court would fully
accord with the views which the counsel have given.   But
it appears that he was carefully examined as to his knowl-
edge and belief in the Deity, and of his youthful convictions
of his accountability to that Supreme Being, and of His
certain displeasure should he be guilty of falsehood.   His
answers to these important questions being satisfactory to the
Court, his evidence was allowed.   The Court charged the

jury that they should examine especially his testimony and compare it with the other evidence given at the trial, and that they should give only such weight to it as it merited from its general concurrence with other testimony.

A certain discretion in the admission or exclusion of testimony must be exercised by the presiding Justice in any case, whether capital or not, but it is not a reckless or arbitrary discretion; it is one to be controlled by sound legal principles, and if exercised beyond this, it is in our opinion, a proper subject for review and correction by the superior tribunal.

It is contended further by the counsel for the prisoners that as testimony was admitted on the trial which was subsequently ruled out, the presumption is that it left an impression on the minds of the jury adverse to the prisoners, and therefore a new trial should be granted. It occasionally happens that testimony is admitted and subsequently ruled out; but in such cases the Court should expressly declare to the jury, as was done in this case, that the testimony is to be entirely disregarded, and it is the solemn duty of the jury to regard the charge. This is not unfrequently done in the course of a trial, but it is a new doctrine that it should defeat the whole proceedings.

The counsel contends further that in introducing testimony of confessions, the burden of proof is on the Crown to show that there was no inducement held out to the prisoners to confess, for the reason that where the testimony has been given to the jury its influence will be felt, although the judge may charge the jury that they must give it no consideration. The Court regard the rule to be, that while the burden of proof is on the prisoners to show that inducement had been held out to them to confess, it was the right of the counsel to object to the introduction of the testimony until he had the opportunity to prove inducements. The Court would then decide upon the competency of the evidence.

But instead of taking this course, the counsel wait till the testimony is given, and then by cross-examination elicit facts which in the judgment of the Court renders the testimony incompetent, and then comes in and files exceptions on the ground that the testimony had an influence against the prisoners, in consequence of which he contends that a new trial should be granted. The Court are of opinion that this exception is not well taken.

It is further contended that as the counsel for the prisoners moved the court for a separate trial, which was overruled, that this is a legitimate ground of exception. Every judge at *nisi prius* has certain discretionary powers, and this is regarded as one of them. By the indictment it is charged that the acts were done in concert, and when it is so charged there seems to be a peculiar propriety that there should not be separate trials. We are of opinion that the court exercised a sound discretion in the order for a joint trial; and were the same motion made before us in a similar case, we should so adjudge. We do not therefore consider it a proper ground of exception.

In the case of Marchand vs. Colson, [12 Wheaton, 481,] Mr. Justice Story gives the opinion of the court, which is very able and elaborate. The decision is, "That when two or more prisoners are jointly charged in the same indictment with a capital offence, they have not a right by law to be tried separately, without the consent of the prosecution; but such separate trial is a matter to be allowed in the discretion of the court." [Commonwealth *vs.* Robinson and others. 1 Gray, 555.]

The further objection, based upon the admission of the testimony of the magistrate Hoapili, as to the plea of guilty made before him by the prisoners, is one upon which their counsel has placed great weight, and it has also received the serious attention of this Court. It was allowed to go to the jury, as it appeared to the presiding Justice to be in

accordance with the ordinary practice of this Court; we would not be understood to say, because it has been often admitted in the Supreme Court at *nisi prius*, that the practice is so invariable as to admit of no exception, for such is not our opinion. A good cause may be shown to exclude it. It is argued that such a cause exists in this case. In the first place, the rule in the Police Courts and District Courts is for the magistrate, when a prisoner is arraigned on complaint, to make him acquainted with the charge, and ask him to plead to it, which being done, it becomes the duty of the magistrate to record it; but it is argued that a previous influence, induced by the officer Neville, was still continuing on the minds of the prisoners, in such a manner that their plea was affected by it. If it were clear to us upon the record that such was the fact, we are of opinion that the plea ought not to have been admitted.

It is not contended that any inducements were held out by the magistrate, and there is no evidence of any. Now as to what Neville and his assistants did and said previously, we find at page 17 of the testimony that Neville swears that he had a conversation with Paakaula, and says, "I did not intimidate him or make any inducements"; and again at page 19 he testifies—"I asked Paakaula if he had sent for me to make a confession, and he said he had. I then swore Paakaula and told him to tell the truth, and cautioned him not to commit himself or any other persons, but to tell the truth; and that if he did it would be better for all parties, and not to wrongfully implicate any one. He said he would do so." As to Kahauliko's confession, Barrett, the interpreter, and whom we regard for that reason better qualified to give a correct history of what was said in the native language to the prisoners, as he himself said it, swears positively at page 21 of the testimony:—"There were no threats or inducements made before Kahauliko's confession; he made it freely and voluntarily, of his own desire." It will be observed that

The King *v.* Paakaula and Kahauliko.

both these men sent for the Sheriff to come and receive their confessions. The interviews were had with them at their own request, and the only question for us is, did anything that Neville said to either of them, operate to bias their plea before the magistrate ?

The most that we see is the remark to Paakaula, "that it would be better for all parties;" but this was coupled with a strong caution, and after having been sent for to hear a voluntary confession. There are authorities which sustain the position that although a remark of this nature is made, if joined with a caution, the confession may be received, (and we would remark here that upon the whole subject the authorities are most singularly conflicting). They were also put on oath. The presiding judge excluded the testimony of the officer Neville, and also of others when the confessions were made in his presence. The correctness of this ruling is not, of course, directly in question.

But after all, so far as the plea of guilty is concerned, was it freely and voluntarily made ? were there threats, intimidation, hopes of favor used by Neville, or his constables, of such a character as necessarily to have operated upon the minds of these prisoners, in the presence of one of their own race, sitting as a magistrate, when they were called upon to plead ? We fail to see in the conduct of Neville sufficient to justify a conclusion of this nature. But, added to this, the evidence of the plea of guilty was only permitted to be considered by the jury under a very careful instruction from the Court, as appears from the statement of the presiding judge, to the effect that they could found no presumption of guilt upon that alone, but that it ought to be sufficiently corroborated by extraneous testimony, or in other words, that without enough testimony outside of it, it was their duty to disregard it altogether. We are to presume that an instruction like this, given (not through an interpreter, but by the Justice himself,) had its legitimate influence. In the case of

Hunt *vs.* People, [3d volume Parker's Criminal Reports,] the decision was : "Where, on the trial of an indictment, evidence has been improperly received, and excepted to, and it appears that the jury were subsequently instructed by the Court, in its charge, to disregard such evidence, it was held that the erroneous decision in receiving the evidence was no ground for reversing the judgment." Under these consider- ations, we feel that the rights of the prisoners were properly guarded by the Court, not only in the introduction of evi- dence, but in the comments made upon it in the charge. Paakaula was effectually cautioned by the Sheriff, and the evidence of Barrett is, that although Kahauliko was not cautioned, his confession was entirely voluntary.

It is said to be improper to dissuade a prisoner from making a confession if he really wishes to do so, as shutting out one of the best avenues of arriving at the truth ; equally improper would it be to persuade him to make one. We cannot perceive from the record any evidence of such per- suasion calculated to influence the plea made before the magistrate Hoapili. As has been demonstrated, the admis- sion of such pleas, unprompted by improper influence, has been allowed in trials before the jury by this Court, when holden by one or more Justices.

We understand the rule has been to admit them whenever it appears that the plea has been made voluntarily, with a full knowledge of the solemnity of the act.

In the case of Rex *vs.* Courts, [7th Carrington & Payne, 487,] the magistrate before whom the examination was made said "that he held out no inducement to the accused—he told him to tell the truth." Littledale, Justice, says : "It can hardly be said that telling a man to tell the truth is ad- vising him confess what he is really not guilty of. The object of the rule excluding confessions is to exclude all con- fessions that may have been procured by the prisoner being led to suppose that it will be better for him to admit himself

The King *v.* Paakaula and Kahauliko.

to be guilty of an offence which he really never committed."
In the language of the Deputy Sheriff there was certainly no
inducement held out which was calculated to make the con-
fession an untrue one, and more especially against himself.
He cautioned him against saying anything that would impli-
cate himself or any one else unjustly. The Court are of
opinion that the plea of guilty, before the magistrate, was
not a legitimate consequence of any conversation had with
the Sheriff, or confession made to him, but it was rather the
continuation of a purpose, which he had when he sent for the
Sheriff, to make a confession. This seems to have been the
voluntary operation of his own mind. Murder is a frightful
secret to keep, and by the laws of the human organization,
the perpetrator will often seek relief by communication with
others. But if freely and voluntarily made, it is legitimate
evidence. The Court will ridgidly exclude all testimony of
confession if made in consequence of a previous threat or
promise, by a person who may be supposed to have some
authority or influence.

In forming this opinion the Court has had the aid of the
presiding Judge of the Circuit where this case was tried, in
furnishing a sketch of the proceedings at the trial, aided by
the record.

Exceptions overruled.