## TERRITORY *v.* SAMUEL K. ONEHA.

## No. 1631.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED MARCH 11, 1926.                    DECIDED MAY 8, 1926.

PERRY, C. J., LINDSAY, J., AND CIRCUIT JUDGE PARSONS
IN PLACE OF BANKS, J., DISQUALIFIED.

CRIMINAL LAW—*evidence—other offenses.*

Evidence of other crimes similar to that charged is relevant
and admissible when it shows or tends to show a particular
criminal intent which is necessary to constitute the crime
charged.    That this evidence incidentally proves independent
crimes is immaterial.

SAME—*evidence—weight and sufficiency.*

Evidence held to be sufficient to sustain verdict.

SAME—*instructions—harmless error.*

An instruction to the effect that the jury may in determining
the degree of credibility to be attached to the evidence of the
defendant take into consideration his interest in the result of
the prosecution, held, on the authority of *Territory* v. *Awana*,
28 Haw. 546, to be nonprejudicial error.

OPINION OF THE COURT BY LINDSAY, J.
(Perry, C. J., dissenting.)

The defendant was convicted of the crime of embezzle-
ment it being charged in the indictment that he, on Sep-
tember 11, 1918, being at that time chief clerk of the
Honolulu water works department, did embezzle the sum
of $44.15.    The case comes here upon exceptions under
which it is contended  (1) that the trial court erred in
admitting evidence of offenses similar to that charged in
the indictment;  (2) in the giving of and refusal to give
certain instructions;  and  (3) that the verdict of the

jury was contrary to the law and the evidence and the weight of the evidence.

For a proper understanding of the matters urged as error it is necessary that the system employed by the water works department in the collecting and crediting of water rates be explained. This system is the same as that described in the opinion of this court in the case of *Territory* v. *Awana,* 28 Haw. 546, where a conviction of a similar embezzlement of water works funds was sustained. The system is as follows:

When an application for the use of city water is granted it is designated by a privilege number. Each consumer is given a ledger card bearing his name, address and privilege number. Before payments are due, receipts in duplicate, the duplicate being called the "stub," are prepared and bound in holders. Consumers are charged for water used either upon a flat rate or upon metre measurement. These bound receipts and stubs for all practical purposes constitute the current records of the department. These are arranged in sequence according to the privilege number commencing with number one and ending with the highest privilege number issued. Shortly before a payment of water rates becomes due a post card notice is sent to the consumer. When the consumer comes to pay his water rate, the receipt bearing his privilege number is stamped paid with a timing receipt stamp, said stamp appearing upon both the receipt and the stub. At the same time the receipt and stub are numbered with an automatic numbering machine, the same number being stamped on both the receipt and the stub. This machine registers consecutive, repeat and duplicate only. This number shows the order in which payments are made. It is also the custom to have the clerk issuing the receipt sign or initial the receipt and stub as a means of identifying the person

issuing the same. Upon making payment, the receipt and stub are torn from the binder, the receipt handed to the consumer, and the stub placed upon a file having two upright steel posts. The money received is put in the cash register which, during the period involved in this case, was accessible to defendant, Enoch Johnson and Awana, and perhaps to several others. Payments as shown by the stubs are next entered in the cash book consecutively in the order in which these payments have been made as shown on the stubs. At the time involved in this case these entries in the cash book were usually made by Awana on the same day upon which payment was made, although at times, owing to pressure of business, not until the following day. At the close of each day the amount of the cash received as shown by the stubs was added up; the cash from the cash register was counted; all checks and drafts were indorsed by the chief clerk; and all payments received for the day were turned over to the city treasurer. This was usually done by the chief clerk but at times was done by others. The chief clerk indorsed all checks regardless of who took check in payment. The accounts of all consumers were kept upon ledger cards arranged according to their privilege numbers. The payments shown by the stubs on file were posted upon the ledger cards whenever the clerks found time, there being no regular time for this. Those who ordinarily received cash and gave receipts at the paying-counter were defendant, Awana and Johnson. Upon rare occasions perhaps others gave slight assistance in this part of the work. At the time in question the defendant was chief clerk in the department, James P. Awana was bookkeeper and Enoch Johnson was ledger clerk. Awana's principal work was to enter payments in the cash book; Johnson prepared and filled out the stubs and receipts referred to, and also did most of the posting

from the stubs to the ledger. Occasionally defendant
made entries in the cash book and at times defendant and
Awana helped to post the ledger cards. After the stubs
were entered in the cash book and after they had been
checked by the auditor with the cash book they were
bound. The auditor checked the stubs against the cash
book about once in six months. He made no thorough
examination of the ledger cards in connection with the
cash book and never checked the ledger against the cash
book. Defendant testified that the auditor had audited
the books but that never, to his knowledge, had the audi-
tor checked the ledger cards against the cash book.

Certain pages of the cash book in the office of the
building inspector, where defendant had previously been
employed, were identified as being in the handwriting of
defendant and used as examples with which certain rec-
ords were compared for the purpose of showing similarity
of handwriting. Defendant admitted that certain pages
of said cash book were in his handwriting. The entries
in the cash book of the water department from August 1,
1918, to August 17, 1918, were admitted by defendant to
have been made by him, as were certain other pages of
the cash book. Up to the time of the trial, the retained
stubs for the years 1917, 1918 and 1919, except a few for
1919, had not been found. During the trial a few of the
stubs for 1917 and 1918 were found. The figures "5421"
on one of these (Ex. G 4) were written in pencil in the
handwriting of defendant. The deputy treasurer of the
city and county testified that on September 14, 1924, cer-
tain records, including the deposit slips from the water
works department covering the period January, 1915, to
January, 1924, had disappeared from the office of the
treasurer and although search had been made these had
never been found.

A check, dated September 11, 1918, drawn by the

Kamehameha Schools, in favor of Honolulu water works, for $44.15 was admitted in evidence. This was admitted to have been indorsed in the handwriting of defendant. This sum of $44.15 was the amount that defendant was alleged to have embezzled. This amount was shown by the undisputed evidence never to have been entered in the cash book of the water works department nor ever to have reached the coffers of the city treasurer. No receipt was found. On the back of the check is written the privilege number and a statement to the effect that a receipt was neither demanded nor desired. The retained stub was not found. The ledger card of the Kamehameha Schools, being privilege No. 4556, was admitted in evidence and thereon was found an entry of $44.15 purporting to have been paid on September 7, 1918, and referring to stub No. 6546. An expert on handwriting testified that this entry was in the handwriting of defendant. The defendant, however, denied that this entry was in his handwriting or that he had made the same. Page 424 of the cash book (admitted to be in handwriting of defendant) shows that stub No. 6546, as there entered, is for $33.10, privilege 7414, September 12, 1918.. Privilege No. 7414 is that of Pantheon block, or J. M. Dowsett, and the ledger card for that privilege number shows $33.10 paid September 12, 1918, with stub No. 6546, but the receipt for that transaction, admittedly initialed by defendant, shows $33.10 received September 12, 1918, but the stub number on the receipt is 6523. On page 425 of the cash book stub No. 6523 is for $26.50 covering privilege No. 3801. Ledger card for privilege No. 3801 shows $26.50 collected September 12, 1918, with stub No. 6540 crossed out and 6523 in red ink. The expert on handwriting testified that these various entries were in the handwriting of defendant.

The first exception to be considered is that the trial

court erred in permitting the prosecution to show other alleged embezzlements of water works funds.

Over the objection of defendant the prosecution was allowed to introduce evidence of five other alleged embezzlements as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1. | August | 2, 1918, | $45. , | "G" | Series | of | exhibits |
| 2. | March | 27, 1918, | 47.75, | "H" | " | " | " |
| 3. | January | 2, 1918, | 77.75, | "I" | " | " | " |
| 4. | December | 21, 1917, | 40.30, | "J" | " | " | " |
| 5. | December | 14, 1917, | 60.10, | "K" | " | " | " |

The evidence introduced in support of each of these five alleged embezzlements was practically the same as that relative to the embezzlement charged in the indictment, that is to say, the evidence in each of these cases tended to show that the consumers had made payments which were not entered in the cash book and for which no stubs were found; that credits for such payments were made upon the water-user's ledger card indicating that receipts and stubs bearing certain numbers had been issued; that payments were found in the cash book under the same receipt and stub numbers made by different consumers in different amounts, said last payments also being credited on the second consumer's ledger card. One of the stubs connected with the transaction of August 2, 1918, was found and introduced in evidence as exhibit G 4. This bore stub number 5421 written in pencil, the expert on handwriting testifying that this was in handwriting of defendant. Defendant admitted having given several of the receipts involved in these transactions. The ledger-card entries pertaining to these transactions were also according to the testimony of the handwriting expert, in the handwriting of defendant.

It is the contention of defendant that evidence of these other alleged embezzlements was inadmissible and that the admission thereof constituted prejudicial error en-

titling defendant to a new trial. As shown by the tran-
script, when the prosecution offered the evidence now
complained of, counsel for defendant, in objecting to its
admission stated his objection as follows: "Mr. Huber:
Our position in regard to the question of intent is simply
this, that there is no claim, there will be no claim, that
if it be shown by the Territory that the payment of
$44.15 involved in this case is actually missing, the city
did not get either the $44.15 paid by the Kamehameha
Schools, or if the cash book on that day was short $44.15,
there will be no claim that it was the result of any mis-
take, that it was any error, or any inadvertence, that if it
can be shown that that money was paid into the treasurer
of the City and County of Honolulu, and was not prop-
erly accounted for through the proper channels, that
it was the result of a criminal act, the defendant of
course will rely upon the fact that if such money was so
taken that he did not take it, but that it was not wrong-
fully taken, it was not taken as embezzlement as defined
by the statute, there will be no such claim made whatso-
ever, it wasn't the result of mere inadvertence. Of course
we do not waive the Territory proving the essentials of
the embezzlement as charged in the indictment. The
Court: That if it can be shown if I understand you, if
the Territory shows that there was a misappropriation of
this amount by the defendant, that such misappropriation
by him would constitute embezzlement by him? Mr.
Huber: Yes, if it can be shown it was by him. The
Court: If the Territory shows by the evidence beyond a
reasonable doubt that the $44.15 alleged in the indictment
to have been embezzled by the defendant, if the Territory
proves beyond a reasonable doubt that that amount of
money was appropriated by the ·defendant for his own
use and benefit, that that act would constitute embezzle-

ment by the defendant? Mr. Huber: Yes, that is our position exactly."

It is contended by counsel that in view of the position taken by him as above set forth, the evidence offered was inadmissible. In other words, the position of the defense seems to be that, if it appeared that defendant were relying or might rely on the theory that the failure of the Kamehameha Schools' payment of $44.15 to be entered in the department books was, or might be, the result of a mistake in bookkeeping, evidence of former similar irregular transactions might be introduced to negative such theory of mistake. Inasmuch, however, as defendant made the statement that he would not claim or seek to escape criminal liability on the theory of mistake, any evidence tending to negative the possibility of mistake became inadmissible. With this contention we cannot agree for, although an admission in open court may render proof unnecessary, such admission cannot make the reception of such proof illegal. Furthermore, the evidence offered was admissible for other purposes than merely tending to negative mistake. In *Territory v. Awana, supra,* this court upheld the admission of evidence of other alleged embezzlements as *tending to show* the particular intent necessary to constitute embezzlement, and in the instant case the evidence offered was competent as tending to show a general plan or scheme.

The exception that the verdict was against the law and the evidence is not sustained. There was ample evidence in the case from which the jury was warranted in finding defendant guilty as charged. The evidence in the case shows beyond doubt that the payment of $44.15 made by Kamehameha Schools never became a city and county realization, but that such payment was illegally converted from its true ownership, in fact, was embezzled. Without going into detail it is sufficient to say that there

was ample evidence from which the jury might infer that not only did defendant have abundant opportunity to commit the offense charged but that he in fact did commit such offense. It is strenuously argued by defendant that the evidence shows that other persons had an equal opportunity with himself to embezzle the money in question. While this may be true and while such an argument might well be, and doubtless was, made with all earnestness to the jury, that argument has little force in an appellate court, for the jury and the jury alone was charged with the duty of weighing the evidence.

The giving of the following instruction forms one of the exceptions relied on as being prejudicial error:

"The court instructs the jury, as a matter of law, that in this Territory one accused and on trial charged with the commission of a crime may testify in his own behalf, or not, as he pleases. You are instructed that when a defendant does testify in his own behalf, then you have no right to disregard his testimony merely because he is accused of crime; that when he does so testify he at once becomes the same as any other witness, and his credibility is to be tested by and subjected to the same tests as are legally applied to any other witness; and in determining the degree of credibility that shall be accorded to his testimony the jury have a right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor and conduct upon the witness stand; and the jury may also take into consideration the fact, if such is the fact, that he has been corroborated or contradicted by credible evidence or by facts or circumstances in evidence."

In *Territory* v. *Awana, supra,* this court held that the giving of a similar instruction did not constitute prejudicial error and, on the strength of that case, we affirm that ruling. We deem it well, however, to say, by way of caution to trial courts, that while such an instruction has been upheld in many jurisdictions, it is not looked

upon with favor, and many respectable authorities hold
that the giving of such an instruction constitutes error
entitling the accused to a new trial.

Having carefully considered all of the exceptions and
finding no merit therein, the exceptions are overruled.

*H. L. Wrenn,* Deputy City and County Attorney
(*W. H. Heen,* City and County Attorney, and *E. K. Mas-
see,* Deputy City and County Attorney, on the brief), for
the Territory.

*S. C. Huber* (*Huber & Kemp* and *H. T. Mills* on the
briefs) for defendant.

#### DISSENTING OPINION OF PERRY, C. J.

While concurring in the view that the evidence adduced
was sufficient in law to support a conviction, I feel com-
pelled, upon another ground, to dissent.

In this case, in precisely the same language as in the
case of *Territory* v. *Awana,* 28 Haw. 546, 571, 572, the
judge presiding at the trial instructed the jury that "in
determining the degree of credibility that shall be ac-
corded to his testimony" (defendant's) "the jury have a
right to take into consideration the fact that he is inter-
ested in the result of the prosecution." All of the instruc-
tions upon this subject were exactly the same as in the
*Awana* case. The surrounding circumstances were the
same. The general nature of the evidence adduced by the
prosecution against the defendant was the same. The
system of collecting water rates and of entering the pay-
ments, in force in the office of the Honolulu water works,
was the same. In this case as in that at least three
clerks (other than the defendant) received at the counter
moneys paid for water rates, made entries in the ledger
cards of the respective water-users and in the cash book
and had opportunities to take money from the cash
drawer. In this case as in that three of these other

clerks testified as witnesses for the prosecution. In this case as in that no comment was made by the trial judge upon the possible interest of each of these three witnesses in the result of the prosecution.

Upon the same reasoning set forth in my dissenting opinion in the *Awana* case and upon the same authorities there referred to, I think that the giving of the instructions in question constituted reversible error and that a new trial should be granted.