# TERRITORY *v.* WONG PUI.

## No. 1696.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. F. ANDRADE, JUDGE.

ARGUED NOVEMBER 9, 1926.          DECIDED NOVEMBER 27, 1926.

PERRY, C. J., BANKS AND PARSONS, JJ.

CRIMINAL LAW—*variance between indictment and proof.*

There is no variance between the pleading and the proof when an indictment charges an assault with a deadly weapon by discharging a revolver at the complainant and the proof is that the shots so fired took effect in the body of the complainant.

SAME—*proof of attempt to commit an offense.*

An indictment charging an attempt to commit an assault and battery is proven by evidence that the attempt was made and was successful.

CONFESSIONS—*cross-examination of defendant—admissibility—presumption of voluntary character.*

A defendant in a criminal case who voluntarily takes the stand in his own defense and testifies to all of the essential occurrences involved in the charge thereby waives the protection of the Fifth Amendment and submits himself to cross-examination upon all of the subjects upon which he has testified and also subjects himself to cross-examination by way of impeachment concerning prior alleged contradictory statements. Under these circumstances cross-examination for purposes of impeachment concerning an alleged confession is *prima facie* permissible and the burden is upon the defendant, if he claims that the confession was obtained under compulsion or improper inducements, to show the facts indicating that the confession was involuntary.

CRIMINAL LAW—*instructions—re-reading at request of jury.*

When a jury returns into court with a request for the re-reading of instructions defining the circumstances which would justify a shooting in self-defense, it is not error for the court to refuse to re-read an instruction relating to the burden of proof upon the issue of self-defense.

The indictment in this case charged that at a time and place named the defendant "with force of arms, wilfully, feloniously and maliciously, and without authority or justification by law, in and upon one Leong Yip then and there being, a felonious assault did make with a weapon obviously and imminently dangerous to life, to-wit, a pistol, loaded with gunpowder and leaden bullets, held in the hand of him, the said Wong Pui, and did, with said pistol held as aforesaid, then and there with force and arms wilfully, feloniously and maliciously, and without authority or justification by law, shoot off and discharge said pistol at and against him, the said Leong Yip, and did then and there and thereby commit the crime of assault and battery with a weapon obviously and imminently dangerous to life." The defendant demurred to the indictment on the grounds, in substance, that the facts set forth in the indictment did not constitute any offense, that the facts set forth did not constitute the offense of assault and battery with a weapon, etc., and that the indictment was vague, indefinite and contradictory. The demurrer was overruled. At the request of the prosecution the court instructed the jury that "the defendant in this case stands charged in the indictment with the offense of assault and battery with a weapon obviously and imminently dangerous to life." The jury returned a verdict of "guilty as charged."

One of the contentions presented under the defendant's bill of exceptions is that the facts set forth in the indictment do not constitute the offense of assault and battery with a weapon but merely set forth a charge of assault with a weapon; that the court erred in overruling the demurrer and in instructing the jury that the offense charged was assault and battery with a weapon and that the verdict was clearly erroneous in that it found the defendant guilty of assault and battery with a weapon.

The evidence for the prosecution was that the defendant fired a revolver at the complaining witness four times and that each of the shots took effect in the body of the complainant. The evidence of and for the defendant upon this point was all to the same effect except that the number of shots testified to was perhaps two only. There was no dispute that the shots fired by the defendant, whether two or more, all took effect in the body of the complaining witness. The defendant's only defense was that in shooting the complainant he acted in necessary self-defense. The precise point urged in support of this contention is that a charge that the defendant did "shoot off and discharge" a pistol "at and against" another is not a charge that the bullets hit the complainant but at best indicates an attempt on the part of the defendant to hit the complainant or, in other words, a mere assault. In the view which we take of the case it is unnecessary to decide the meaning that ought to be attached to these words when used in an indictment. There is no doubt that the statement in the indictment that the defendant did "thereby commit the crime of assault and battery" is a mere conclusion of law and does not in itself sufficiently charge the offense of assault and battery. What the offense charged is must be determined from the facts alleged in the indictment. If in this instance the indictment sufficiently sets forth facts constituting an assault and battery with a weapon, the instruction of the court was in conformity with that charge and the verdict of the jury in words that the defendant was found "guilty as charged" will be a verdict of guilty of assault and battery. The undisputed evidence having been that the shots fired by the defendant took effect, the charge, the instructions, the evidence and the verdict are all consistent and no error was committed. If, on the other hand, the facts set forth in the indictment were sufficient merely to show an as-

sault, still there was no error. An assault as defined by our statute (R. L. 1925, Sec. 4127) is "a malicious attempt forcibly to do a corporal injury to another" and an assault and battery (Sec. 4128) is "the malicious and forcible infliction of a corporal injury on another,"—in each instance without authority or justification by law. In other words, an assault as so defined is an attempt to commit a battery or an assault and battery. The undisputed evidence in the case having shown that the shots fired by the defendant all hit the complainant and that thereby a complete assault and battery was committed necessarily shows also that there was an attempt to commit that assault and battery, an attempt which was successful. We decline to subscribe to the view that an attempt to shoot another is any the less an attempt because it succeeds. In *Territory* v. *Leong Kun,* 29 Haw. 90, 100, in which the indictment charged that the defendant "did shoot off and discharge a revolver at and against" the complainant, the evidence was that the complainant sustained a corporal injury. This court held that a contention that there was a variance between the charge and the proof (regarding the indictment as charging merely an assault) was untenable.

The instruction complained of in this connection required of the prosecution a higher degree of proof than was requisite if the indictment merely charged an assault but that is a matter of which the defendant cannot properly complain. The prosecution met the requirements of the instruction by introducing undisputed evidence of an assault and battery and, necessarily, a successful attempt to commit an assault and battery. If the indictment merely charged an assault the verdict of guilty "as charged" was that the defendant was guilty of that assault.

The prosecution having rested, the defendant called two

other witnesses and then took the stand himself. He testified fully concerning the occurrences referred to in the indictment. His defense was that he was first attacked by the complainant, closely pressed and threatened with injury and that thereupon he fired the shots in self-defense. In cross-examination he was asked by the prosecutor, "Do you remember making a statement to Mr. Kellett down at the police station about this matter, did you or didn't you? A I did make a statement there. Q That was on the 8th day of May, two days after the shooting? A Yes. Q And you told the police officers down there that day everything that happened down there? A I didn't say much. Q I will ask you if you didn't say this: 'I am forty-eight years old, I am living at Waipio, Ewa, working as a rice planter, there are thirteen of us down there including the boss and myself. The boss's name is Chun Fai.' " Defendant's attorney thereupon said: "I will object to this, the only purpose would be to show former contradictory statements." The objection was overruled. Other questions concerning alleged former statements were then asked the defendant by the prosecutor. Defendant's counsel: "I object to that, not being inconsistent with what the witness has stated." The objection was overruled. Other similar questions and answers followed. Defendant's counsel: "Let it be understood that my objection and exception runs to all this, that the defendant objects to this entire evidence." The court: "The exception will be noted." Other similar questions and answers followed. Defendant's counsel: "For the purpose of this record I want to have the further objection as running to all this, that at the time this man was held for investigation he was without advice of counsel, without any opportunity to communicate with anybody, and that there is no showing that the statement was made voluntarily and for that reason I object to it." The prosecuting at-

torney: "It isn't a confession, but the cross-examination of a credible(?) witness." The objection was overruled. Other similar questions were asked and answered. Defendant's counsel: "I want to have it definitely understood that my objection and exception goes to all that, entirely volunteered(?)." The court: "I think the record shows that." Other similar questions and answers followed. The foregoing were the only objections noted by counsel for the defendant at the trial. In answering this series of questions the defendant admitted making some of the prior statements inquired about which, it might well have been argued by the prosecution to the jury, contradicted some of the material testimony given by the defendant, denied making other of the alleged contradictory statements and answered still other questions in a qualified manner. For the purposes of this opinion, the defendant's answers may be regarded as evidence of a confession that he fired the shots at the complainant and that he did so, not because it was or appeared to him to be necessary in self-defense but because he had been drinking, was under the influence of liquor and had "lost his head," as he testified. On behalf of the defendant it is argued that since the cross-examination just referred to brought out evidence of a confession it was not admissible, the prosecution not having first proven that the confession was voluntary.

As said by Mr. Chamberlayne in his work on "The Modern Law of Evidence," Vol. 2, Sec. 1472, "there is no branch of the law of evidence in such inextricable confusion as that relative to confessions." The confusion seems to extend to all of the different aspects of the subject, not only as to when a confession is voluntary and when it is involuntary but also as to the procedure to be followed in determining whether to admit or to reject the proffered confession. In England and in the majority of

American jurisdictions the rule seems to be that the burden is upon the prosecution to prove that a confession is voluntary before it becomes admissible. In perhaps a smaller number of jurisdictions the rule is, that confessions are presumed to be voluntary and that the burden is upon a defendant to prove that it was involuntary if he wishes to have it excluded. *King* v. *Paakaula,* 3 Haw. 30, 34; *Burgess* v. *State,* 42 So. (Ala.) 681, 682; *Williams* v. *State,* 58 So. (Ala.) 925, 927; *Dixon* v. *State,* 13 Fla. 636, 643; *Hauk* v. *State,* 148 Ind. 238, 252; *Thurman* v. *State,* 169 Ind. 240; *State* v. *Campisi,* 49 So. (La.) 535, 537; *Commonwealth* v. *Sego,* 125 Mass. 210, 213; *Commonwealth* v. *Culver,* 126 Mass. 464, 465; *State* v. *Meyers,* 99 Mo. 107, 119; *State* v. *Armstrong,* 203 Mo. 554; *State* v. *Hernia,* 68 N. J. L. 299, 301; *State* v. *Sanders,* 84 N. C. 728, 730; *Rufer* v. *State,* 25 Ohio St. 464; *Lefevre* v. *State,* 50 Ohio St. 584; *Williams* v. *State,* 19 Tex. App. 276, 279; 1 Wigmore, Ev., §860; 2 Chamberlayne, Mod. L. of Ev., §1578; 2 Wharton, Crim. Ev., §689; and 1 Roscoe, Crim. Ev., 8th ed., p. 68. In this latter class is Hawaii. In 1867 in *King* v. *Paakaula* this court said: "The counsel contends further that in introducing testimony of confessions, the burden of proof is on the Crown to show that there was no inducement held out to the prisoners to confess, for the reason that where the testimony has been given to the jury its influence will be felt, although the judge may charge the jury that they must give it no consideration. The court regard the rule to be, that while the burden of proof is on the prisoners to show that inducement had been held out to them to confess, it was the right of the counsel to object to the introduction of the testimony until he had the opportunity to prove inducements. The court would then decide upon the competency of the evidence." That rule, as far as we are aware, has not been overruled at any time by this court.

Later cases there are in which this court was called upon to decide whether upon certain evidence that had been admitted the confession was voluntary or involuntary; but in no case has the court reviewed or expressed a different opinion upon the question of the presumptions involved or of the burden of proof.

The precise question, concerning the presumptions and the burden of proof when a confession is sought to be proven by the prosecution in its case in chief by witnesses other than the defendant, is not before us and we shall not now consider it,—although it may be that when it does arise it will be found to be closely analogous to that which is now under consideration. In the case which is actually before us the defendant of his own accord took the stand and gave testimony relating to all of the essential issues of fact involved in the case. He thereby, upon all of the authorities, and upon reason, waived the protection of the Fifth Amendment that no person "shall be compelled in any criminal case to be a witness against himself" and subjected himself to cross-examination to the same extent, no more and no less, that any other witness would be liable to. *Fitzpatrick* v. *United States,* 178 U. S. 304, 315, 316; *Sawyer* v. *United States,* 202 U. S. 150, 165, 166; *Smith* v. *State,* 34 So. (Ala.) 396, 397; *Clarke* v. *State,* 78 Ala. 474; *State* v. *Ober,* 52 N. H. 459, 463; and *Harrold* v. *Oklahoma,* 169 Fed. 47, 50. He thereby subjected himself to cross-examination, for purposes of impeachment, as to alleged contradictory statements theretofore made by him. This well established rule is recognized by our statute (R. L. 1925, Sec. 2625) which provides that "if a witness upon cross-examination as to a former statement made by him relative to the subject matter of the cause or prosecution and inconsistent with his present testimony, does not distinctly admit that he has made such statement, proof may be

given that he did in fact make it." *Prima facie,* under this rule, the prosecution was entitled to cross-examine the defendant concerning prior contradictory statements. If there was anything in the circumstances of the particular case to operate as an exception or to exempt the defendant from this burden of cross-examination, as for example, that the earlier statement inquired about had been made to the defendant's confessor or to his attorney, the burden would be upon the defendant to show the facts necessary to justify such an exception or exemption and, similarly, if the earlier statement was obtained from the defendant by improper inducements or threats, by force or intimidation or by other form of compulsion, the burden, we think, was upon the defendant to show those facts in order to exempt himself from what, *prima facie,* appeared to be ordinary and proper cross-examination. This view is strengthened by the provision of R. L. 1925, Sec. 2630, that "no confession which is tendered in evidence on any trial, shall be rejected on the ground that a promise or threat has been held out to the person confessing, unless the judge or other presiding officer shall be of opinion that the inducement was really calculated to cause an untrue admission of guilt to be made." The only inference deducible from this statutory prohibition is that the confession *must* be received unless a promise or threat of the kind mentioned ("calculated to cause an untrue admission of guilt to be made") or some other equally invalidating compulsion is shown to have been made. It is obviously based upon the theory that the confession is to be deemed voluntary unless it is shown to be involuntary.

The fact that the earlier statements were made to police officers at the police station as a result of their questioning and the further possible fact, which does not seem to be shown by the record, that the defendant was at the

time under arrest, do not suffice to show that the statements were obtained under compulsion or under circumstances rendering them in law involuntary and do not of themselves give rise to any presumption of involuntariness. "In this court also it has been settled that the mere fact that the confession is made to a police officer, while the accused was under arrest in or out of prison, or was drawn out by his questions, does not necessarily render the confession involuntary, but, as one of the circumstances, such imprisonment or interrogation may be taken into account in determining whether or not the statements of the prisoner were voluntary." *Bram* v. *United States,* 168 U. S. 532, 558. To the same effect are *Sparf* v. *United States,* 156 U. S. 51, 55; *Pierce* v. *United States,* 160 U. S. 355, 357; *Wan* v. *United States,* 266 U. S. 1, 14, 15; *State* v. *Armstrong,* 203 Mo. 554; and *State* v. *Hernia,* 68 N. J. L. 299, 301.

It is to be observed that in the precise case before us neither the defendant nor his attorney charged at the trial that the confession was in fact involuntary. A defendant, however ignorant, when asked to admit the making of a prior inconsistent, inculpating statement would naturally be expected to explain that he made it under compulsion, if that was the fact. Had the defendant or his counsel charged at the time that the earlier statements were involuntary or obtained by duress and requested an opportunity to show that fact preliminarily by the defendant's own testimony, such opportunity would, as a matter of course, have been accorded to the defendant. An order setting aside the verdict and granting a new trial, as the case now stands, would have to be based upon the ground, not that the confession was involuntary but that it was not shown to have been voluntary, and would leave the defendant at liberty, in so far as any evidence now before the court is concerned,

when offered an opportunity at the new trial to show that the statements were involuntary to say that he had no such evidence and that the statements were in fact voluntary.

The conclusion here reached does not deny to the defendant any substantial right which he otherwise would have. If compulsion was used upon him in obtaining the confession he certainly knows it and can testify to it, and is entitled, if he so desires, to call as witnesses those who exercised the compulsion upon him. Whether the one method of procedure or the other is followed, the facts will be finally laid before the court in their entirety.

In one or more of the cases holding that no distinction is to be drawn between evidence of confessions obtained by cross-examination of the defendant and that obtained from other witnesses, the prosecution had in its case in chief made an effort to introduce the confessions and the court had found upon the preliminary evidence submitted that the confessions were involuntary. When later in those cases the effort was made by cross-examination of the defendant to prove the same confessions, the court was doubtless right in not permitting the cross-examination, it already appearing that the confessions were involuntary. In the case at bar no such effort was made in the prosecution's case in chief and there was nothing before the court at the time of the rulings complained of tending to show that the confession was improperly obtained.

If the Supreme Court of the United States has adopted the view that in a case such as that at bar, under all its circumstances, the cross-examination under consideration was not permissible simply because the prosecution did not prove in advance that the earlier contradictory statements were made voluntarily, something of which we are as yet far from satisfied, yet it is competent for this court

to adopt the view which it is now adopting. It has been definitely held, in *Rubenstein & Co.* v. *Hackfeld & Co.*, 18 Haw. 126, that this court may, notwithstanding the amendment to the Organic Act of March 3, 1905, which permitted appeals from this court to the Federal Supreme Court in cases involving more than $5000, follow decisions previously rendered by this court, although contrary to decisions of that court, on other than federal questions. The decision which we are. following, strengthened as it is by the influence of our statutes, was rendered in 1867, long prior to annexation.

The court gave one instruction requested by the prosecution and another requested by the defendant, defining the circumstances under which the defendant would be justified in acting in self-defense. It also gave the following instruction (No. 4) requested by the defendant: "The defense relied upon by the defendant is self-defense. * * * Where a defendant relies upon such defense, then the burden is upon the Territory to show beyond every reasonable doubt that the defendant was not acting in self-defense." After the jury had retired for consideration of its verdict it returned with the request that it be "instructed on the law of self-defense again." The court re-read the two instructions first above mentioned and refused the request of the defendant for a re-reading of the additional instruction just quoted. It asked the jury whether there was "anything further" that it "would like to have on this subject." A juror then asked for another reading of a part of one of the instructions which had been re-read. No other request was made by the jury. In denying the request of the defendant for a re-reading of instruction No. 4, the court said that it felt that "the jury is sufficiently informed as to the other matter that you refer to." The two instructions which were re-read were the only ones requested

which bore upon the substantial law of self-defense. Instruction No. 4 dealt merely with the matter of burden of proof; and there were other instructions which were given dealing with the latter subject. The presiding judge evidently understood the jury to request the re-reading of those instructions only which defined the circumstances justifying self-defense. Some degree of discretion must be accorded a presiding judge in such a matter as this. We cannot find that there was any error in refusing to re-read instruction No. 4 which had been once given to the jury.

The court also instructed the jury that "in determining the degree of credibility that shall be accorded to his" (defendant's) "testimony the jury have a right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor and conduct upon the witness stand." In two recent cases, *Territory* v. *Awana,* 28 Haw. 546, 571, and *Territory* v. *Oneha,* 29 Haw. 150, 158, in which precisely the same instruction was given, it was held that the giving of the instruction was not reversible error, although the court added, in the latter case: "We deem it well, however, to say by way of caution to trial courts, that while such an instruction has been upheld in many jurisdictions, it is not looked upon with favor, and many respectable authorities hold that the giving of such an instruction constitutes error entitling the accused to a new trial." In the case at bar the instruction in question was given in September, 1925, after the ruling in the *Awana* case but before the decision in the *Oneha* case. The unqualified decision rendered in the *Awana* case is applicable to the case at bar.

The other exceptions presented by the defendant have all been considered, even though not here specifically referred to. The exceptions are overruled.

*W. C. Moore,* Deputy City and County Attorney (also on the brief), for the Territory.

*H. E. Stafford* (also on the briefs) for defendant.