# IN EQUITY. DECISION OF CHIEF JUSTICE LEE ACTING AS CHANCELLOR.

## A. ORR EWING and WILLIAM MILLER *vs.* R. C. JANION.

The Equity side of the court having rightful jurisdiction of a matter, will, after discovery, proceed to give relief, in order to avoid the multiplicity of suits.

An acknowledgement made before the Lord Provost, Mayor, or other chief magistrate of any large city in Great Britain, France, or the United States, or before a Notary public, and duly authenticated under his hand and official seal, is sufficient evidence of the execution of a deed, or power of attorney.

The bill filed in this suit alleges that the defendant as one of the late firm of Messrs. Starkey, Janion & Co. has in his possession certain goods and moneys belonging to the complainants, who reside in Glasgow, Scotland, for which he refuses to account, prays that he may be compelled to account therefor, &c.

On the final hearing, it was contended that the bill is merely a bill of discovery, and that on the coming in of the defendant's answer, the case, as far as the Equity side of this court is concerned, is brought to an end. We entertain a different opinion. The bill, while it seeks a discovery of the facts as to the receipt, sale, &c. of the goods, also prays that the defendant may be made to account for such goods. Now this suit, as we have shown in a former decision, is clearly one over which the Equity side of this court has rightful jurisdiction; and once having jurisdiction, it is a well settled principle, that the court ought to proceed to give relief, in order to avoid the multiplicity of suits. " The jurisdiction having once attached, it shall be made effectual for the purposes of complete relief." (1 Story's Eq. Jur. p. 82, § 64, K.) But it is said by the counsel for the defendant, that granting it to be true that relief is ancillary to discovery, yet the complainant's case must fall to the ground; for the defendant by his answer has made no discovery; and the bill should be dismissed with costs. We are of the opinion, however, that the defendant's answer, and his deposition made before the Master, do make a discovery, and that too, sufficient, in connection with the other proofs to require the court to proceed to a decree.

But the demand for an account was made, and this is brought, by virtue of a power of attorney executed by the complainants in Glasgow, to Messrs. Porter & Ogden of Honolulu, which power of attorney it is contended by the counsel for the defendant is not duly authenticated, and consequently, one which Mr Janion was not bound to obey. The execution of the power of attorney is certified to have been proved before the Hon. Sir James Anderson, Lord Provost and Chief Magistrate of the city of Glasgow; and to that is annexed the certificate of " R. Jameson, Notary Public," under his seal, to the effect that the Honorable Sir James Anderson is the Lord Provost and Chief Magistrate of the city of Glasgow, and the signature " James Anderson, Lord Provost," to the certificate of proof is genuine. But, say the learned counsel, this is not sufficient : for the certificate of the Lord Provost of Glasgow, in the absence of any statutory enactment making it admissible in evidence, is no better

than the statement of a private person, and entitled to no more weight. We are aware that the general rule on this subject, as it prevails in England and the United States, supports the doctrine contended for, but that rule has not been adopted here to its full extent, and in the present position of affairs at these islands, we do not feel justified in so adopting it. Foreign certificates have been occasionally admitted into the United States, (United States *vs.* Mitchell, 3 Wash. C. C. Rep. 65, 96,) under circumstances similar to those existing in this case; and we feel inclined to say, that so long as we have no Commissioners in other countries to take the acknowledgment of deeds, powers of attorney, &c., an acknowledgment made before the Lord Provost and Chief Magistrate of Glasgow, or the mayor or chief magistrate of any large city in Great Britain, France or the United States, or a notary public, and duly authenticated under his hand and official seal, will be sufficient evidence of the execution of such deed or power of attorney here. Such a ruling would seem almost necessary in these remote islands, to the safety of commercial transactions. The language of Professor Greenleaf in his able Treatise on the Law of Evidence, we think, would fully sustain such a ruling in this case. "If the instrument is formally executed in a foreign country, and the execution is *authenticated by a Notary Public*, this is sufficient proof to entitle it to be read. But if the authentication was before the *Mayor of a foreign town*, it is not received without some evidence of his holding the office." (2 Greenleaf's Ev. § 298.) But it is unnecessary for us to go to that length in the present case; for if there is any defect in the proof of the power of attorney, we are of opinion that it has been cured by the repeated admissions of the defendant in his letters to complainant's attorneys of November 29th and December 1st, 1851, by the defendant's introduction of the letters from A. Orr Ewing & Co. dated August 22d, 1851, and finally, by the defendant's deposition made before the Master on the 18th August, 1852. There is not a shadow of doubt in our mind that the power of attorney is genuine, nor has the defendant ever denied its validity in his correspondence with the attorneys, Porter & Ogden. The only ground taken by the defendant in the outset, was that stated in his letters to the attorneys, namely: that the goods of the complainants were secure in his hands, and that before Porter & Ogden could proceed to act upon the power of attorney, and take them out of his keeping, it was incumbent on them to show that the goods were in a state of insecurity, or in his own words, "to prove that the goods are unsafe in my hands." This was undoubtedly the firm and honest belief of the defendant, based on the construction he gave to the letter of the complainants, received by him at the same time that Porter & Ogden received the power of attorney; but, unfortunately, it was a most mistaken one. It was wholly in the discretion of Porter & Ogden to act under the power of attorney or not, without any regard to the letter from the complainants to the defendant, but even by the tenor of that letter, they were free to demand the goods, "in the event of their considering the goods unsafe in your (the defendant's) hands." They chose to act, and it was then the duty of the defendant to have delivered over the goods on their demand. He refused, proceeded to sell the goods without accounting to Porter & Ogden; and having placed himself in the wrong—he

must abide by the consequences.  It appears by the deposition of the defendant, the only satisfactory evidence in the case in reference to the sale of the goods, that the goods were sold by him at high prices, and that he has remitted to the complainants the proceeds of those goods in full, according to the custom of the trade  It moreover appears, that the complainants have acknowledged the receipt of those remittances, with the exception of the remittance of $1500—through Jardine, Matheson & Co., of Hong Kong, and that since then, he has received advices of another consignment from the complainants. It is said, then, that he has fully accounted to the complainants for the proceeds of their goods, and is not bound to account over again to their attorneys.  To this it is replied that he had no right to account, after the demand made of the goods, except through the attorneys of the complainants, Porter & Ogden, and that he should be made to pay them the amount of the goods sold, and be left to get the remittances back from A. Orr Ewing & Co., as best he may. That the defendant did wrong, there can be no question, but may he not pass by the attorneys and account to the principals directly? We think he may, though in so doing he takes upon himself the risk of all losses by the way.  If after Janion refused to deliver the goods they had been burned or otherwise destroyed, he would have been the loser; and if his remittance of $1500 should never reach the complainants or prove bad, he will be liable to make it good again. But the complainants have received and acknowledged the receipt of all remittances except the $1500—and the only question remaining, is, shall the defendant be made to account here to Porter & Ogden for this sum for which he can show no receipt?  In the eye of the law we do not see how the defendant can escape the liability to account to the attorneys here; but convinced as we are by the presumptive evidence afforded by the late consignment of the complainants to the defendant, that this remittance has been received by the principals in Glasgow, we cannot in Equity and good conscience decree that it should be paid to their attorneys in Honolulu.  Still, as there is an uncertainty in the matter, and for the security of all parties, we do hereby order and decree, that the defendant pay in to the Clerk of this court the sum of $1500, as a deposit, to abide the event of the receipt or non-receipt of the remittance by the complainants in Glasgow.  And it is further ordered and decreed that the defendant pay all the costs of this suit from the 16th of March 1852, and the complainant all costs anterior to that date.

Honolulu, December 4, 1852.