TERRITORY OF HAWAII *v.* MATSUMOTO MORITARO.

EXCEPTIONS FROM CIRCUIT COURT, FIFTH CIRCUIT.

ARGUED NOVEMBER 9, 1904.        DECIDED NOVEMBER 28, 1904.

FREAR, C.J., HARTWELL AND HATCH, JJ.

CONFESSION.

A confession by a person accused of murder made in the presence of the sheriff, his deputy, a detective, and an interpreter not in the employ of the prosecution held admissible in evidence, notwithstanding the fact that the sheriff charged the defendant to tell the truth, and did this because other witnesses had implicated defendant.

ID.

A slight assault by a detective upon defendant during an interview at which the detective sought to obtain a confession from defendant, but failed to do so, held not to affect the admissibility in evidence of a confession made two days subsequently.

OPINION OF THE COURT BY HATCH, J.

The defendant Matsumoto Moritaro was indicted by the grand jury of the fifth circuit on the 25th day of March, 1904, for the murder of one Albion H. Glennan. The defendant was tried at the March term, 1904, of the circuit court of the fifth circuit, was found guilty of murder in the first degree and was sentenced to death. The murder was one of extreme atrocity. The defendant had been employed as a laborer upon a ditch being constructed on the island of Kauai, and was discharged by the deceased at the instance of the engineer in charge of the work for neglecting his duty. The defendant claimed that he was assaulted by the deceased and discharged without being paid the

.amount due him. The deceased was an overseer in charge of the work, which consisted largely of tunneling and the use of ·dynamite. The murder was committed by exploding seven or ·eight sticks of giant powder under the bed of the deceased, who slept in a tent near the scene of the work. The telephone wire leading from this tent to the Makaweli plantation had been cut by the defendant just prior to the murder.

Certain exceptions to the admission of testimony were taken ·during the course of the trial, none of which have been relied upon in the defendant's brief. The only point presented to us is as to the admissibility of the confession made by the defendant. It is claimed on behalf of the defendant that the confession was made under duress and should not have been received in evidence. The evidence shows that some thirty Japanese were arrested on suspicion, being held on charges of vagrancy and other charges. The defendant was arrested in Honolulu and ·sent to Kauai. While in jail at Kauai one Chester A. Doyle, a detective, interviewed the defendant on the 5th or 6th day of February, 1904, for the purpose of obtaining a confession from him, if possible. Doyle testified to the court, on a hearing had in the absence of a jury, as to the admissibility of the confession, that he started in to ask the defendant everything he could possibly think of leading up to the time he came to the islands and as to his connection with the plantations. Doyle says that the "defendant told so many conflicting stories and lied so that when we called his attention to his conflicting statements and asked him if he wasn't lying he would remain silent. Every time I questioned him he would tell another story and he would get tripped up, and eventually he got very insulting and used language that you or I would not take from anybody, and I shook him and boxed his ears."

"Court. More than once?
A. I think more than once.
Q. So as to inflict any bodily injury?
A. There were no marks on him, I struck him with my open hand over his ears.

Q.  You struck him in consequence of his using insulting.
language to you ?

A.  Yes, sir.

Q.  After you had shook him and boxed his ears, as you say,.
did you have any further conversation with him ?

A.  None ; we left him."

On the morning of the 8th of February the preliminary exam-
ination was had before the district magistrate, and the defendant
was committed to await the action of the grand jury.  At the.
close of the examination one Kawahara, who had been called as
a witness for the prosecution, asked permission to have an inter-
view with the defendant.  Kawahara was the person at whose
house the defendant took refuge on the morning of the 9th of
January, after committing the murder.  Kawahara had testified
that the defendant when he came to his house had told him all
the details of the murder.  After this conversation with Kawa-
hara at the court house the defendant admitted that he was the
guilty party and expressed a willingness to make a full confes-
sion.  The defendant was then taken back to the jail, and in the
afternoon of the same day was again brought to the court house,.
there being present the sheriff, Mr. Coney, the deputy sheriff,.
Mr. Rice, Mr. Doyle, Mr. Prosser and Mr. Sheba.  The latter
acted as interpreter.  He was the Japanese editor of the *"Gar-
den Island,"* and was in no way connected with the prosecution..
Mr. Sheba stated that the defendant was warned before making.
any statement that everything he might say would be used
against him, and that he could stand mute and say nothing at all
if he chose ; that the statement made by the defendant was vol-
untary, and that no threats or inducements were used to influ-
ence the defendant.  The defendant then gave a detailed state-
ment of everything connected with the commission of the crime
and the statement was reduced to writing in his presence.  Mr..
Coney, the sheriff, before the statement was made, charged the
defendant to tell the truth, using only the words "tell the truth."
On cross-examination the sheriff stated that he charged the
defendant to tell the truth because other witnesses had impli-

cated him. It is not clear that this fact of the implication by other witnesses was communicated to the defendant by the sheriff. If, however, he had stated this to the defendant, though it was an improper statement to make to him, we do not think that under the circumstances this alone should render the confession inadmissible. In *Bram v. United States,* 168 U. S. 532, the statement to a person under examination that a co-suspect had stated that he had seen him commit the offense was one of a number of circumstances which, taken together, led to the rejection of a confession, but the court stated that when isolated from each other the facts might not have warranted that result. The other facts in the *Bram* case were not at all analogous to the facts in this case. In the *Bram* case the defendant was subjected to great personal indignity and browbeating, to such an extent that the court held that Bram could not be considered a free agent when he made his statement. There is nothing in the present case upon which to base such a conclusion. The trial judge, before admitting the confession in evidence, excused the jury and entered upon a most careful and searching examination of all of the facts connected with the making of the confession. He found as a matter of fact that no promise or threat had been held out to the defendant, nor that any inducement had been shown calculated to cause an untrue admission of guilt to be made. Our statute on the subject is as follows:

"No confession which is tendered in evidence on any trial, shall be rejected on the ground that a promise or threat had been held out to the person confessing, unless the judge or other presiding officer shall be of opinion that the inducement was really calculated to cause an untrue admission of guilt to be made; nor shall any confession which is tendered in evidence on any trial be rejected on the ground that it purports to have been made on oath, if proof can be given to the judge or other presiding officer, that in fact it was not so made." Sec. 1427, C. L.

The court ruled that under the statute the confession was admissible in evidence. This ruling was correct. The confession was deliberate and voluntary, and was taken under circumstances showing a due regard for the rights of the defendant.

We can see no ground for an argument that the defendant was not a free agent at the time he made this statement.

The misconduct of Doyle on the occasion two days previous, when he shook and slapped the defendant, we do not find had any influence in causing the defendant to make the confession. The assault, though inexcusable, was in fact trivial in its nature. The defendant made no admission at the time, and on his examination at the trial even denied that any assault had taken place. It was rather an exhibition of loss of temper on the part of Doyle than an assault with intent to injure the defendant or to influence his action. All of the circumstances show that it made a very slight impression, if any, upon the defendant. He had had time to fully recover from the effect of the indignity before he was brought into court on his preliminary examination before the committing magistrate. Notwithstanding this, the action of Doyle on that occasion calls for severe condemnation. To lay his hands at all on one held under arrest was a cowardly thing to do and a gross violation of the rights of the prisoner. A confession made at that time and under those circumstances could not have been received in evidence, for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of a prisoner, and therefore excludes the declaration if any degree of influence has been exerted. *Bram v. United States, supra.* The whole procedure of police inquisition known as the "sweat box" is a matter which has no warrant of law. It is entirely at variance with the spirit of the common law. As pointed out in *Bram v. United States,* it is condemned by the English courts as unfair to the prisoner and approaching dangerously near to a violation of the rule protecting an accused person from being compelled to testify against himself. Without holding that no interrogation can be put by the police to a person arrested on suspicion, such investigations must be conducted with a due regard for the rights of the accused, and must be free from browbeating, intimidation and undue pressure of any kind.

The exceptions are overruled and the case remanded to the circuit court of the fifth circuit.

*M. F. Prosser, Deputy Attorney General,* for prosecution.

*A. G. Correa* for defendant.