12 So.2d 854

**PALMORE v. STATE.**

4 Div. 281.

Supreme Court of Alabama.

April 8, 1943.

Wm. N. McQueen, Acting Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

O. S. Lewis, of Dothan, for appellant.

BOULDIN, Justice.

Appellant, Wash Palmore, was indicted for the murder of Curtis Warren, was convicted of murder in the first degree, and punishment fixed at imprisonment for life.

The grave question on this appeal is the ruling of the trial court admitting in evidence a confession reduced to writing and signed by defendant.

Curtis Warren, a white man, resident of Donalsonville, in the State of Georgia, came to his death by violence on the night of May 19, 1941, in Houston County, Alabama, at a point on the highway leading

from Donalsonville, Georgia, to Dothan, Alabama. Wash Palmore, a negro, was at the time an employee of Mr. Warren, and continued in such employment by his widow until July 6, 1941.

Sid Howell, of Blakely, Georgia, one-time sheriff of that county and for twenty-five years connected with the sheriff's office, but now a private citizen, undertook to investigate the murder of Mr. Warren, and was paid $200 by the mother of the deceased. Clarence May, of Dothan, was enlisted to collaborate with Howell.

On Sunday, July 6, 1941, Howell, or Howell and May, caused Palmore to be arrested in Donalsonville, and brought to Dothan, and there lodged in jail. No warrant was sworn out, nor commitment obtained. Palmore was thus detained as a prisoner until Friday, July 11th, when the county solicitor at Dothan and an Alabama Highway Patrolman took the prisoner out of jail and returned him to his home in Donalsonville. Howell intercepted the party enroute, and requested the prisoner be turned over to him. This request was denied. A few minutes after his release, Howell took Palmore into custody, and caused him to be transported to and put in jail at Ft. Gaines, in another Georgia county. There he remained until Sunday, July 13th, when Howell removed him to the jail in Dawson, in still another Georgia county, and there confined him until the afternoon of Saturday, July 19th. Meantime Howell was interviewing and questioning the prisoner. He went to Dawson and had such interview on Tuesday following his incarceration on Sunday. After this interview the prisoner was put on a diet of bread and water by Sheriff Turner, in charge, from Tuesday night until Thursday.

On Saturday, July 19th, May, with two other private citizens, Adams and Forrester, went by automobile from Dothan to Dawson, picking up Howell enroute. The negro prisoner was taken from jail, and with the five white men, Howell, May, Turner, Adams and Forrester, removed from Dawson to Dothan. They left Dawson 4:30 to 6 P. M., as estimated by different witnesses, and arrived at Dothan, a distance of some ninety miles, at 12 P. M. to 1 A. M. Sunday. There was a stop enroute before reaching Blakely. Here, a confession of guilt was obtained.

We omit the testimony of defendant touching accusations, importunities, threats, and violence during his incarceration and enroute on this occasion. Howell and the others, except Mr. Forrester, who was not examined, all deny any violence, threats, or promises inciting hope or fear. Without question the prisoner was shackled with handcuffs and leg irons before leaving Dawson and down to the oral confession enroute.

We quote from the testimony of Mr. May:

"We stopped on the way. That is where he started to make a confession on the road between Dawson and Blakely. About 12 or 15 miles below Dawson. It may have been 20 miles this side of Dawson. I imagine we were there probably 40 minutes or an hour.

"Q. Persuading him to confess? A. No persuasion was used. There was plenty talking to him about confession. We were not talking to him to dissuade him.

"Q. If you were talking to him about making the confession was it to persuade one? To which question the State objected, which objection being considered by the court was ordered and adjudged sustained to which ruling of the court the defendant duly excepted.

"Q. You all talked to him about confession? A. I think all of us talked to him. Some of us talked to him separate, not all of them, Sid talked to him some to himself and Sid and I talked to him together a little. Ways from the others and all of us talked to him about it.

"Q. About confessing?

"A. About committing the crime.

"I don't say we were trying to get him to confess. We were talking to him about confessing and he did confess. We were trying to find out who committed the crime. We told him we had evidence that convinced us he had committed the crime and he might as well confess. Sure that isn't at all uncommon. It was there on that occasion he started his confession. I don't know that we stopped any more from that place to Blakely. Drove slowly and talked about it all along. He was telling us more in detail as we came along. All of us were asking him questions about it. I can't tell you everything we said but I can tell you some of the things. We had witnesses. In other words I told him about knowing about his trip he made to Florida one night that the crime was committed and asked him wasn't he going

down there to cover up something that was done in connection with the killing. That was the time he went down to Marianna, at the time he had gone to Panama City to tell a man not to say anything.

"Q. You told him you knew he had gone to Panama City and didn't you tell him you all knew he was guilty and he might as well confess it? A. Some of us might have told him that. I don't say we didn't tell him that. We were convinced he was guilty."

Mr. Turner's testimony was to like effect.

No charge had been preferred in any county nor warrant of arrest issued.

The statutes of Georgia, put in evidence, read:

"27-211. A private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge; and if the offense is a felony, and the offender is escaping, or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion."

"27-212. In every case of an arrest without warrant, the person arresting shall, without delay, convey the offender before the most convenient officer authorized to receive an affidavit and issue a warrant. No such imprisonment shall be legal beyond a reasonable time allowed for this purpose."

The following conclusions we deem inescapable:

1st. The accused was taken into custody, deprived of his liberty, shackled, confined in jail, and maltreated by a private citizen, in violation of the law, and in utter disregard of the fundamental rights of a citizen of the United States.

2nd. He was transferred from jail to jail at a distance and cut off from communication with friends or legal counsel.

3rd. All this with a view to having complete domination over him. Believing the accused to be guilty, Howell took these oppressive measures to wring from him a confession of guilt.

4th. These flagrant invasions of the constitutional rights of the citizen had a direct influence, in the relation of cause and effect, in the procurement of the confession.

■ A confession so obtained cannot be held a voluntary confession, and a conviction predicated thereon is a denial of due process of law guaranteed by the Federal Constitution. Amend. 14. This, we think, is now fully settled by the decisions of the Supreme Court of the United States. McNabb v. United States, 63 S.Ct. 608, 87 L.Ed. ——; Ward v. Texas, 316 U.S. 547, 555, 62 S.Ct. 1139, 86 L.Ed. 1663, 1667; and see Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682; Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Canty v. Alabama, 309 U. S. 629, 60 S.Ct. 612, 84 L.Ed. 988; White v. Texas, 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342; Lomax v. Texas, 313 U.S. 544, 61 S.Ct. 956, 85 L.Ed. 1511; Vernon v. Alabama, 313 U.S. 547, 61 S.Ct. 1092, 85 L.Ed. 1513.

See also Constitution of Alabama, Section 6.

This question was directly raised by objection to the alleged confession, and exception reserved.

After arriving in Dothan, the accused still held in custody, the solicitor and a stenographer were summoned, and at 2:30 Sunday morning, the accused was examined at length by the solicitor. He was first asked in the presence of Howell and party if he wanted to make a statement and, if so, was his statement voluntary, of his own accord, without fear, restraint or threats on the part of anybody. He answered all these inquiries in the affirmative.

Further questions and answers disclosed a confession of guilt with much detail. When written up, it was sworn to and signed by mark.

The trial court in passing upon the admissibility of the confession said:

"Gentlemen, I have reached a conclusion with reference to the admission of the alleged confession on the part of the defendant as contended for by the State. I hope my conclusion is right. The conclusion I have reached with reference to the matter should not be taken by anyone as condoning on the part of the Court or approving by the Court of the treatment accorded to the defendant in the State of Georgia. The Court is impressed that many of his fundamental rights as a citizen of the State of Georgia were trampled under foot. That isn't the way people in

civilized countries should treat a citizen of this or any other state. This is disclosed from the undisputed testimony in the case. I see no rime nor reason for anyone without authority to take into custody another party, put him in jail, spirit him from one jail to another in different parts of the state. It is the insistence on the part of the defendant that he was coerced by threats, by violence, intimidation, and otherwise, to make the statement which he finally did make as insisted upon by the State. That is controverted by about all the people who had him in charge at that time. True it is that he was brought over to Dothan and here in Dothan the statement, it appears from the testimony, appears to have been reaffirmed or to have been gone into detail. There were present at that time several of the parties who were with him, all I believe except one, over in Georgia when the alleged confession seemed to have been begun. I recognize the rule of law that if the confession is extorted from a person at one time and is reiterated at another time, that unless that impending peril or threat, duress, is entirely removed, and the party so understands it is removed, that the original characteristics of the confession, or the circumstances under which it was secured, still prevail. However, the testimony further discloses the matter was read over to him in the Houston County jail the next morning, and as I understand the testimony, none of the parties were present. Then, subsequently, at another date, as I recall the testimony, a witness testified that he had conversations with the defendant in the jail here in which he said no force, no threats, no intimidation, or words to that effect, were prevalent at the time he made the confession originally."

The confession was then admitted in part.

The later statements referred to by the trial judge as indicative that the influence of the wrongful conduct leading to the confession were removed were made in jail the next morning, so far as appears, without advice or reassurance from any source.

We cannot agree with the finding of the trial court on this line. So far as appears, defendant was still under the spell of all that had preceded, including his signed statement, then confronting him.

"When a confession has been obtained, or inducement held out, under circumstances which would render a confession inadmissible, a confession subsequently made is not admissible in evidence, unless, from proper warning of the consequences, or from other circumstances, there is reason to presume that the hope or fear, which influenced the first confession, is dispelled. And in the absence of any such circumstances, the influence of the motives proved to have been offered will be presumed to continue, and to have produced the confession, unless the contrary is shown by clear evidence; and the confession will be rejected." Porter v. State, 55 Ala. 95, 101; Young & Griffin v. State, 68 Ala. 569; Redd v. State, 69 Ala. 255; Owen v. State, 78 Ala. 425, 56 Am. Rep. 40; Lester v. State, 170 Ala. 36, 54 So. 175; Ballard v. State, 225 Ala. 202, 142 So. 668; Curry v. State, 203 Ala. 239, 82 So. 489.

The evidence of defendant's guilt, apart from the confession, was wholly circumstantial. We make no comments on the probative force of such evidence, nor of the evidence tending to show some other person was the slayer, taking advantage of an opportunity to cast suspicion on defendant.

In any event, the confession erroneously admitted was very material. For such error the judgment must be reversed and the cause remanded.

Reversed and remanded.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.