881 P.2d 538

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Troy BOWE, Defendant–Appellee,**

and

**Vincent Smalls, Defendant.**

No. 16222.

Supreme Court of Hawai'i.

Oct. 6, 1994.

James H.S. Choi, Deputy Pros. Atty., City and County of Honolulu, on the briefs, Honolulu, for plaintiff-appellant.

David C. Schutter, Mitchell S. Wong and Paul D. Hicks of Schutter & Glickstein, on the briefs, Honolulu, for defendant-appellee.

Before KLEIN, Acting C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and SOONG, Circuit Court Judge, In Place of MOON, C.J., recused.

RAMIL, Justice.

The sole issue presented in this appeal is whether the coercive conduct of a private person is sufficient to render a confession inadmissible.

On September 17, 1991, Defendant–Appellee Troy Bowe (Defendant) was charged with Assault in the Second Degree in violation of

Hawai'i Revised Statutes (HRS) § 707–711 (Supp.1992). Defendant filed a Motion to Suppress Evidence arguing that his statement to the police was involuntary because it was the result of undue influence by Coach Riley Wallace (Wallace). In granting Defendant's Motion to Suppress Evidence, the circuit court concluded that the coercive conduct of Wallace was sufficient to render Defendant's confession inadmissible under HRS § 621–26 (1985). We agree and affirm.

## I. *FACTS*

On January 21, 1990, a brawl involving a number of individuals occurred at one of the dormitory buildings on the University of Hawai'i–Manoa (UH) campus. During the fight, Steven Oshiro (Victim) was beaten and sustained physical injuries.

On February 9, 1990, Sergeant John Pinero (Sergeant Pinero) of the Honolulu Police Department (HPD) contacted Wallace, head coach of the UH Men's Basketball Team, and requested his assistance in making arrangements for the police to interview certain members of the basketball team suspected of being involved in the January 21, 1990 fight. Sergeant Pinero provided Wallace with a list of suspects that included Defendant.

Wallace later told Defendant that he needed to go to the police station and that Wallace would go with Defendant if he required assistance. On February 12, 1990, Defendant went to the police station accompanied by Wallace. Defendant was given *Miranda* warnings and subsequently signed an HPD Form 81, waiving his constitutional rights to counsel and to remain silent. After waiving his constitutional rights, an interrogation commenced in which Defendant admitted assaulting Victim.

On September 17, 1991, an Oahu Grand Jury indicted Defendant and Vincent Smalls for Assault in the Second Degree, in violation of HRS § 707–711(1)(a).

On November 21, 1991, Defendant filed a Motion to Suppress Evidence on the grounds that his February 12, 1990 statement to the police was involuntary because it was obtained through the use of official state coercion in violation of Defendant's constitutional right to due process. On May 8, 1992, the circuit court entered its Findings of Fact, Conclusions of Law and Order Granting Defendant's motion to suppress evidence. This timely appeal followed.

## II. *DISCUSSION*

The Prosecution contends that the circuit court erred by granting Defendant's motion to suppress his February 12, 1990 confession to police because coercive *police* action is required for a confession to be found involuntary. Thus, the Prosecution maintains that the circuit court erred in concluding that Defendant's confession was involuntary as a result of Wallace's coercive influence.[1]

■■■ We review the circuit court's conclusions of law (COLs) under the right/wrong standard. *State v. Furutani*, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994) (citation omitted). A COL is not binding upon the appellate court and is freely reviewable for its correctness. *Id.* Moreover, a COL that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned. *Id.*

In granting Defendant's Motion to Suppress Evidence, the circuit court entered the following COLs:

3. Defendant TROY BOWE'S statement to Sergeant Pinero on February 12, 1990, was coerced and the result of undue influence brought to bear upon him by Wallace.

4. Defendant TROY BOWE's statement to Sergeant Pinero was not the product of his rational intellect and free will because Defendant TROY BOWE feared that if he did not follow Wallace's direction, he would be suspended from the Basketball Team, and therefore said statement was not voluntary.

5. Said statement being involuntary, it is barred from being received in evidence under [HRS] § 621–26.

6. This Court makes no ruling on Defendant TROY BOWE's argument that

---

1. The Prosecution, however, does not contest any of the circuit court's findings of fact.

Wallace was exercising State police power when he instructed Defendant TROY BOWE to go to the Honolulu Police Department.

By declining to rule on whether Wallace was exercising "State police power," the circuit court implicitly concluded that coercive conduct of a private person, namely Wallace, was sufficient to render a confession inadmissible under HRS § 621–26.[2]

Whether the coercive conduct of a private person is sufficient to render a confession involuntary is a case of first impression in this jurisdiction. Thus, the Prosecution relies on *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), for support. In *Connelly,* the United States Supreme Court held that coercive police conduct is a necessary predicate to finding that a confession is not voluntary under the due process clause of the United States Constitution. *Id.* at 167, 107 S.Ct. at 522. Therefore, the Prosecution maintains that absent a finding that the police engaged in some coercive activity, Bowe's confession must be deemed voluntary. Thus, we begin our analysis with *Connelly.*

### A. *Colorado v. Connelly*

In *Connelly,* Connelly approached a police officer in downtown Denver and, without any prompting, confessed to a murder. *Id.* at 160, 107 S.Ct. at 518. The officer immediately advised him of his *Miranda* rights. *Id.* Connelly replied that he understood his rights but still wanted to talk about the murder. *Id.* at 160, 107 S.Ct. at 518. Connelly also stated to the police officer that he had been a patient in several mental hospitals. *Id.* After another police officer arrived, Connelly was again advised of his rights and was asked "what he had on his mind." *Id.* Connelly answered that he had come all the way from Boston to confess to the murder of a young girl who had been killed in Denver in late 1982. *Id.* After being held overnight, Connelly became visibly disoriented the next morning and stated for the first time that "voices" had told him to come to Denver and confess. *Id.* at 161, 107 S.Ct. at 518. Connelly was then sent to a state hospital and evaluated by a psychiatrist. *Id.*

At a preliminary hearing before a Colorado trial court, Connelly moved to suppress his statements to the police. *Id.* at 161, 107 S.Ct. at 519. The psychiatrist who evaluated Connelly testified that Connelly was experiencing "command hallucinations" and that this psychotic condition had motivated his confession but had not impaired his ability to understand his *Miranda* rights. *Id.* The Colorado trial court ruled that the initial statements and the custodial confession must be suppressed because they were involuntary, although the police had done nothing coercive in securing them. *Id.* at 162, 107 S.Ct. at 519.

The Supreme Court of Colorado affirmed, holding that the admission of the evidence would violate the due process clause of the fourteenth amendment to the United States Constitution, and that Connelly's mental condition had precluded his ability to make a valid waiver of his *Miranda* rights. *Id.* The Colorado Supreme Court further stated that the issue of voluntariness must be resolved by evaluating the totality of circumstances and that the absence of police coercion or duress did not foreclose a finding of involuntariness. *Id.* The court stated that the ultimate test of voluntariness is whether the statement was the product of a rational intellect and free will, and declared that free will may be overborne as much by certain forms of severe mental illness as by external pressure. *Id.* The court also concluded that admitting Connelly's confession constituted "state action" in violation of the fourteenth amendment, stating that "[s]tate action enters the picture ... when a trial court permits the prosecution ... to utilize [an involuntary confession] as evidence of guilt." *Id.*

---

2. HRS § 621–26 (1985) provides that "[n]o confession shall be received in evidence unless it is first made to appear to the judge before whom the case is being tried that the confession was in fact voluntarily made."

We note, that the legislative history of HRS § 621–26 is silent as to whether coercive police conduct is a necessary predicate to finding a confession involuntary.

On certiorari, the United States Supreme Court reversed and remanded. Writing for six members of the Court, Chief Justice Rehnquist held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." [3] *Id.* at 167, 107 S.Ct. at 522. Therefore, because Connelly had not been coerced by the police into making his incriminating statements, the Court concluded that the admission of his confession into evidence would not constitute a constitutional violation. *Id.*

The Supreme Court noted that precedent demonstrated that police overreaching has been a "crucial element" in its confession cases for fifty years. *Id.* at 163, 107 S.Ct. at 520. The Court also rejected the Colorado Supreme Court's conclusion that admitting Connelly's confession would constitute state action, noting that the Colorado Supreme Court had failed to recognize the essential link between coercive activity of the State and a resulting confession. *Id.* at 165, 107 S.Ct. at 521. The Court further stated that courts should exclude illegally obtained evidence only to deter future constitutional violations, and that excluding Connelly's confession would "serve absolutely no purpose in enforcing constitutional guarantees." *Id.* at 166, 107 S.Ct. at 521.

Justice Brennan, in a dissent joined by Justice Marshall, argued that admitting the involuntary confession of a mentally ill person is "antithetical to the notion of fundamental fairness embodied in the Due Process Clause." *Id.* at 174, 107 S.Ct. at 525. Justice Brennan objected to the majority's focus on deterring police misconduct, arguing that the majority ignored two hundred years of constitutional jurisprudence by giving insufficient weight to the value of free will and to the goal of protecting private conscience and human dignity.[4] *Id.* at 176, 107 S.Ct. at 526. He also rejected the majority's view that admitting an involuntary confession did not constitute state action, asserting that the due process clause requires courts, like all other state agencies to act in accordance with the fundamental principles of liberty and justice. *Id.* at 180, 107 S.Ct. at 529 (citations omitted).

Several law review articles have also been critical of the Supreme Court's decision in *Connelly.* A Harvard Law Review comment, concluded, that *Connelly* was "unnecessarily broad" and departed from both precedent and the values underlying the privilege against self-incrimination, and was likely to lead to "fundamental unfairness." Comment, *Right Against Self Incrimination—Involuntary Confessions,* 101 Harv.L.Rev. 179 (1987). The article further stated that:

> [t]he privilege against self-incrimination protects suspects' free will from external interference. It also is founded on perhaps the most basic constitutional value, "the respect a government—state or federal—must accord to the dignity and integrity of its citizens." However, any person who coerces a confession necessarily violates a suspect's dignity by overriding his free will, and the state participates in that violation by allowing coerced statements to be used as evidence. Therefore, admitting coerced confessions, no matter who coerced them, is fundamentally unfair.

> Admitting confessions coerced by third parties is also contrary to precedent. Both state and federal courts have ruled that confessions coerced by private parties make that evidence inadmissible." *Id.* at 166–67, 107 S.Ct. at 521–22.

**3.** Defendant urges that the Supreme Court's statement in *Connelly,* is purely dictum because the issue whether "a state actor other than a law enforcement officer coerced an individual into incriminating himself by means of a threat of the imposition of a state-sanctioned penalty was not before the court[.]" Answering Brief (A.B.) at 18–19. However, the Court not only held that coercive *police* activity is a necessary predicate to finding that a confession is not voluntary under the due process clause of the United States Constitution; it also stated that "[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not

**4.** As Justice Brennan noted, the Court's position in *Connelly* belies its earlier position on this issue implicit in *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). In *Bram,* the Court intimated in dictum that coerced confessions, "whether made upon an official examination or in discourse with private persons," are not admissible evidence. *Id.* at 547, 18 S.Ct. at 188.

or foreign policemen are inadmissible and the Supreme Court itself excluded a confession coerced by a foreign policeman in *Bram v. United States.*

*Id.* at 186–87 (footnotes omitted).

Similarly, a Texas Law Review article criticized *Connelly* as being "insupportable" and was especially critical of the Court's rejection of "trial reliability" and "free and unrestrained choice" as interests protected by the federal constitutional confession doctrine. Dix, *Federal Constitutional Confession Law: The 1986 and 1987 Supreme Court Terms,* 67 Tex.L.Rev. 231, 271, 275–76, 289, 305, 313 (1988).

Specifically addressing the Court's holding that police coercion is a necessary predicate to a finding that a confession is involuntary, the Texas Law Review article argued:

> [i]f due process protects a defendant's interest in trial accuracy, the use of a confession obtained through private coercion may infringe on it. The reliability of an overtly coerced confession probably does not depend on whether the coercion is governmental or private. If due process protects a suspect's dignity interest in being free from the use of self-incriminating admissions unless those admissions reflect a free choice to submit to criminal liability, use of a coerced confession probably offends this interest whether governmental or private factors caused the absence of freedom of choice.
>
> If however, the only purpose of federal constitutional law is to control *official* activity that threatens federal constitutional interests, private coercion is irrelevant to admissibility. *Connelly* constitutionalizes that position. If the *Connelly* analysis remains controlling, lower courts must ac-

cept the dicta regarding private coercion— whether or not it is consistent with pre-*Connelly* voluntariness law.

*Id.*

As a final note, the article urged state tribunals to reject the Supreme Court's decision as a model and independently consider how constitutional law should regulate law enforcement interrogation activity and a suspect's decision to confess. *Id.* at 347–49. To this end, the author suggested that courts look to their state constitutional requirements and statutory provisions addressing the requirements for the admissibility of confessions and develop their own confession law doctrines. *Id.; see also* Dix, *"Voluntariness" and "Intelligence" of Confessions as "Independent" Texas Law Issues,* 20 Tex.Tech L.Rev. 1021, 1095 (1989) (Texas courts should reject the *Connelly* approach as a matter of state law).

The foregoing criticism, perhaps, explains why state courts have inconsistently applied *Connelly* to their cases involving confessions coerced by private action.[5] *See People v. Bernasco,* 185 Ill.App.3d 480, 133 Ill.Dec. 563, 541 N.E.2d 774 (1989), *aff'd,* 138 Ill.2d 349, 150 Ill.Dec. 155, 562 N.E.2d 958 (1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2052, 114 L.Ed.2d 458 (1991) (noting with approval commentary critical of *Connelly,* court declined to decide issue based on *Connelly,* and affirmed suppression of confession based on finding that defendant did not voluntarily waive his fifth amendment rights). *See also People v. Seymour,* 188 Mich.App. 480, 470 N.W.2d 428, 430 (1991) (without addressing *Connelly,* court held that confession coerced by a private citizen can also render the statement involuntary and inadmissible); *People v. Whitehead,* 116 Ill.2d 425, 438, 108 Ill.Dec.

---

**5.** We note that prior to *Connelly,* a number of courts held that the coercive conduct of a private person was sufficient to render a confession inadmissible. *See United States v. Hearst,* 412 F.Supp. 880 (N.D.Cal.1976); *Palmore v. State,* 244 Ala. 227, 12 So.2d 854 (1943); *State v. Christopher,* 10 Ariz.App. 169, 457 P.2d 356 (1969); *People v. Haydel,* 12 Cal.3d 190, 115 Cal.Rptr. 394, 524 P.2d 866 (1974); *Lawton v. State,* 152 Fla. 821, 13 So.2d 211 (1943); *Commonwealth v. Mahnke,* 368 Mass. 662, 335 N.E.2d 660 (1975), *cert. denied,* 425 U.S. 959, 96 S.Ct. 1740, 48 L.Ed.2d 204 (1976); *State v.*

*Schaumberg,* 83 Nev. 372, 432 P.2d 500 (1967); *People v. Frank,* 52 Misc.2d 266, 275 N.Y.S.2d 570 (1966), *appeal denied; People ex rel. Ruffin v. Dros,* 20 N.Y.2d 645, 231 N.E.2d 788, 285 N.Y.S.2d 1025 (1967). *But cf. Anglin v. State,* 259 So.2d 752 (Fla.Dist.Ct.App.1972) (admitting confession made by 15-year-old youth despite evidence that his mother told him that he was to tell the truth or she would "clobber" him); *Yates v. State,* 267 Ind. 604, 607, 372 N.E.2d 461, 463 (1978) (coercive conduct by fellow inmate, a private citizen, insufficient to render confession inadmissible).

376, 380, 508 N.E.2d 687, 691, *cert. denied,* 484 U.S. 933, 108 S.Ct. 307, 98 L.Ed.2d 266 (1987) (without referring to *Connelly,* court held that statements made to police after Defendant's sister-in-law visited with him in the interrogation room were admissible because the defendant's sister-in-law was not acting as a "police instrumentality"); *State v. Foster,* 303 Or. 518, 525, 739 P.2d 1032, 1036 (1987) (confession induced by private threats is inadmissible under a state statute that applies to all confessions); *State v. McCullough,* 56 Wash.App. 655, 784 P.2d 566, *review denied,* 114 Wash.2d 1025, 793 P.2d 976 (1990) (relying on *Connelly,* court held that the coercive conduct of a private person does not raise an error of constitutional magnitude); *Darghty v. State,* 530 So.2d 27, 31 (Miss.1988) (citing *Connelly,* court held a confession resulting from coercion by defendant's wife was admissible).

### B. *Rejecting Connelly*

We begin by reiterating the precept that, "[w]hen the United States Supreme Court's interpretation of a provision present in both the United States and Hawai'i Constitutions does not adequately preserve the rights and interests sought to be protected, we will not hesitate to recognize the appropriate protections as a matter of state constitutional law." *State v. Lessary,* 75 Haw. 446, 453, 865 P.2d 150, 154 (1994) (citations omitted).

Because the Supreme Court's decision in *Connelly* limits the interests protected by federal constitutional confession law, we find compelling reasons for rejecting *Connelly* as a model for interpreting our own state constitution. Thus, independent constitutional considerations arising under article I, sections 5 and 10 of the Hawai'i Constitution compel us to hold that the coercive conduct of a private person may be sufficient to render a Defendant's confession involuntary.

### 1. *Right Against Self–Incrimination:*

#### *Article 1, Section 10 of the Hawai'i Constitution*

■ Under the fifth amendment to the United States Constitution and article 1, sec-

tion 10 of the Hawai'i Constitution, "[n]o person shall ... be compelled in any criminal case to be a witness against" himself or herself. When a confession is obtained in violation of either of these provisions, the prosecution will not be permitted to use the confession to secure a defendant's criminal conviction. *State v. Kelekolio,* 74 Haw. 479, 502, 849 P.2d 58, 69 (1993). In *Kelekolio,* we stated that:

> [t]he constitutional right against self-incrimination prevents the prosecution's use of a defendant's extrajudicial admissions of guilt where such admissions are the product of coercion. The basic considerations that require exclusion of confessions obtained through coercion "are the inherent untrustworthiness of involuntary confessions, a desire that criminal proceedings be accusatorial rather than inquisitorial and a desire that the police not become law breakers in the process of achieving society's valid enforcement objectives." The burden is on the prosecution to show that the statement was voluntarily given and not the product of coercion.

*Id.* at 502, 849 P.2d at 69 (citations omitted).

■ In contrast to the values underlying the fifth amendment stressed in *Connelly,* the considerations underlying the right against self-incrimination under the Hawai'i Constitution are not limited to deterring government coercion, but are broader. While the Supreme Court in *Connelly* stated that, "[t]he sole concern of the Fifth Amendment ... is governmental coercion," 479 U.S. at 165, 107 S.Ct. at 522, we have recognized that one of the basic considerations underlying the exclusion of confessions obtained through coercion is the "inherent untrustworthiness of involuntary confessions." *Kelekolio,* 74 Haw. at 502, 849 P.2d at 69. An involuntary confession is inherently untrustworthy because the free will of an individual is overborne by the external influence exerted in obtaining it.[6]

---

6. In *Connelly,* the Court acknowledged that a confession made by a suspect without free choice might be "quite unreliable." 479 U.S. at 165,

107 S.Ct. at 522. The Court went on to hold, however, that this reliability concern is to be "governed by the evidentiary laws of the forum,

We have also recognized a preference for an accusatorial system of justice, rather than an inquisitorial one, to ensure the reliability of our criminal law enforcement system. *Id.* As Justice Brennan recognized in *Connelly:*

> A concern for reliability is inherent in our criminal justice system, which relies upon accusatorial rather than inquisitorial practices. While an inquisitorial system prefers obtaining confessions from criminal defendants, an accusatorial system must place its faith in determinations of "guilt" by evidence independently and freely secured.... [W]e justified our reliance upon accusatorial practices:
>
>> We have learned the lesson of history ... that a system of criminal law enforcement which come to depend on the "confession" will, in the long run, be less reliable and more subject to abuses than a system which depends on extrinsic evidence independently secured through skillful investigation.

*Connelly,* 479 U.S. at 181, 107 S.Ct. at 529 (internal quotations and citations omitted) (Brennan, J., dissenting).

As Justice Brennan aptly stated:

> The absence of police wrongdoing should not, by itself, determine the voluntariness of a confession ... The requirement that a confession be voluntary reflects a recognition of the importance of free will and of reliability in determining the admissibility of a confession, and thus demands an inquiry into the totality of circumstances surrounding the confession.

*Id.* at 176, 107 S.Ct. at 526.

■ As we articulated in *Kelekolio, supra,* our focus is not confined to deterring police misconduct, but rather, we have stressed other important considerations underlying the right against self-incrimination. Accordingly, we reject the Supreme Court's narrow focus on police coercion in *Connelly* and hold that the protections accorded under article I, section 10 of the Hawai'i Constitution are broader.

*see, e.g.,* Fed.R.Evid. 601, and not by the Due Process Clause of the Fourteenth

### 2. *Due Process Clause:*

### *Article I, Section 5 of the Hawai'i Constitution*

■ The due process clause of article I, section 5 of the Hawai'i Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law[.]" Although the due process clause of the Hawai'i Constitution is modeled after the fourteenth amendment to the United States Constitution, the due process protection under our state constitution is not necessarily limited to that provided by the United States Constitution. *State v. Bernades,* 71 Haw. 485, 487, 795 P.2d 842, 843 (1990) (citations omitted). *See also State v. Lessary,* 75 Haw. 446, 865 P.2d 150 (1994) (the supreme court is not bound to give provisions of the Hawai'i Constitution the same interpretations as those given under the United States Constitution).

Accordingly, this court has, in certain circumstances, broadened the due process rights of the accused in criminal proceedings. *See, e.g., State v. Matafeo,* 71 Haw. 183, 787 P.2d 671 (1990) (this court rejected the United States Supreme Court's decision in *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), which held that due process is violated when the state destroys evidence that is of potential exculpatory value only if defendant can show the state acted in bad faith, and held instead that a showing of bad faith is irrelevant); *State v. Santiago,* 53 Haw. 254, 492 P.2d 657 (1971) (this court rejected the United States Supreme Court's decision in *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and held that the Hawai'i Constitution does not allow the State to use a statement obtained in violation of *Miranda* for impeachment purposes). *See also* Van Dyke, *The Protection of Individual Rights Under Hawai'i's Constitution,* 14 U.Haw.L.Rev. 311, 326–334 (1992).

In *Connelly,* the Supreme Court rejected a general free will requirement in its due process analysis and insisted on a prerequisite

Amendment." *Id.*

finding of official coercion. 479 U.S. at 167, 107 S.Ct. at 521. In the Court's view, precedent demonstrated that police coercion had been a "crucial element" in its confession cases. *Id.* at 163, 107 S.Ct. at 520.

■ Although we have previously stated that "[t]he touchstone of due process is protection of the individual against arbitrary action of the government," *Bernades*, 71 Haw. at 487, 795 P.2d at 843 (citation omitted), we have also stated that the due process clause serves to "protect the right of the accused in a criminal case to a fundamentally fair trial." *State v. Matafeo*, 71 Haw. 183, 185, 787 P.2d 671, 672 (1990). Implicit in a "fundamentally fair trial" is a right to make a meaningful choice between confessing and remaining silent.

As Justice Brennan stated:
[d]ue process derives much of its meaning from a conception of fundamental fairness that emphasizes the right to make vital choices voluntarily: "The Fourteenth Amendment secures against state invasion ... the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will...." *Malloy v. Hogan*, 378 U.S. 1, 8, 12 L.Ed.2d 653, 84 S.Ct. 1489 [,1493] (1964). This right requires vigilant protection if we are to safeguard the values of private conscience and human dignity.
*Connelly*, 479 U.S. at 176, 107 S.Ct. at 526 (Brennan, J., dissenting).

■ Accordingly, we recognize that an individual's capacity to make a rational and free choice between confessing and remaining silent may be overborne as much by the coercive conduct of a private individual as by the coercive conduct of the police. Therefore, we hold that admitting coerced confessions, regardless of the source of the coercion, is fundamentally unfair.

Nevertheless, we acknowledge that some sort of state action is required to support a defendant's claim that his due process rights were violated. In *Connelly*, the United States Supreme Court noted that a prerequisite finding of official police coercion was consistent with the settled law requiring "some state action" to support a defendant's claim that his due process rights under the fourteenth amendment were violated. Nonetheless, the Court rejected the Colorado Supreme Court's reasoning that sufficient state action was present to support a due process claim by virtue of the admission of Connelly's confession into evidence in a court of the State. *Id.* The Supreme Court noted that the Colorado Supreme Court had failed "to recognize the essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant on the other." *Id.*

■ The United States Supreme Court's rejection of the Colorado Supreme Court's approach in *Connelly* is premised on its narrow focus on police coercion. *Id.* at 163, 107 S.Ct. at 520. Because the values underlying the due process clause of the Hawai'i Constitution are broader, we are not bound by the Supreme Court's rationale. Therefore, although no state action is involved where an accused is coerced into making a confession by a private individual, we find that the state participates in that violation by allowing the coerced statements to be used as evidence.[7] As Justice Brennan argued in rejecting the majority's view that admitting an involuntary confession does not constitute state action, "[t]he due process clause requires that state action, *whether through one agency or another*, shall be consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions." *Connelly*, 479 U.S. at 180, 107 S.Ct. at 529 (citing *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936)) (emphasis supplied and internal quotations omitted).

7. In *Hunter v. People*, 655 P.2d 374 (Colo.1982), the court held that although the confession was obtained from the defendant by a private citizen, [s]tate action enters the picture ... when a trial court permits the prosecution at a jury trial to utilize as evidence of guilt a confession which is extracted under circumstances that so overbear the individual's will as to render the statement involuntary, that is not the product of a rational intellect and a free will. *Id.* at 376 (citing *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). We acknowledge, however, that in light of *Connelly*, *Hunter* is no longer viable.

60

■ Accordingly, we decline to follow the Supreme Court's rationale in *Connelly* and hold that official police coercion is not a necessary predicate to finding that a confession is involuntary under article I, sections 5 and 10 of the Hawai'i Constitution.[8] By rejecting *Connelly* as a matter of state constitutional law, we acknowledge that the absence of police coercion does not foreclose a finding of involuntariness. Rather, we recognize, as has been our prerogative, that the issue of voluntariness must be resolved by evaluating the "totality of circumstances" surrounding the making of the statement regardless of whether the source of the coercion was a private individual or the state.

■ Against this background, we hold that the circuit court did not err in concluding as a matter of law that Defendant's confession was involuntary after finding coercive conduct by Wallace. In determining that Defendant's statement was coerced, the circuit court entered the following FOFs:

1. In [sic] or about January or February of 1990, Sergeant John Pinero (hereinafter "Sargeant Pinero") was an employee of the [HPD], who was at that time working on an investigation of an assault which allegedly involved Defendant TROY BOWE.

2. In his capacity as a police officer with the [HPD], Sergeant Pinero called Riley Wallace (hereinafter "Wallace"), at that time basketball coach of the University of Hawai'i at Manoa Basketball Team (hereinafter "Basketball Team"), and gave Wallace a list of suspects who were on the Basketball Team that Sergeant Pinero wanted Wallace to bring down to the [HPD] (hereinafter "List").

3. Wallace, as head basketball coach, had the authority to suspend athletes or remove them from the Basketball Team and, in the case of scholarship-athletes, to initiate procedures to withdraw their athletic-scholarships.

4. Defendant TROY BOWE was a scholarship-athlete on the Basketball Team.

5. Defendant TROY BOWE was on said List.

6. Sergeant Pinero specifically asked Wallace to locate the individuals on the List and have them meet with Sergeant Pinero.

7. Sergeant Pinero, however, did not request that Wallace use force or coercion while attempting to have individuals on the List meet with Sergeant Pinero.

8. Wallace then contacted Defendant TROY BOWE and informed him that he had to go down to the [HPD] to meet with Sergeant Pinero.

9. Wallace informed Defendant TROY BOWE that Wallace would accompany him to the [HPD] in place of an attorney and instructed Defendant TROY BOWE to make a statement to Sargeant Pinero.

10. Wallace did not inform Defendant TROY BOWE that he could or should have an attorney present with him when he went to be interviewed by Sargeant Pinero.

11. Defendant TROY BOWE believed that he could not refuse to follow Wallace's directions because if he did so Wallace could suspend him from the Basketball Team or institute procedures to revoke Defendant TROY BOWE's athletic-scholarship.

We conclude that the circuit court's findings of facts and the totality of circumstances surrounding Defendant's statement support the court's conclusion that Defendant's custodial statement to the police was the product of Wallace's undue influence. Therefore, we hold that the circuit court properly concluded that Defendant's confession was involuntary and hence inadmissible.

### III. *CONCLUSION*

We hold that the coercive conduct of a private person may be sufficient to render a confession inadmissible based on article 1, sections 5 and 10 of the Hawai'i Constitution. Therefore, we part company with the United States Supreme Court's decision in *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93

---

8. We reserve for another day resolution of the issue whether statements made by a "mentally ill" person, in the absence of coercive conduct of a third-party, may be found involuntary within the meaning of article I, sections 5 and 10 of the Hawai'i Constitution.

L.Ed.2d 473 (1986), that held that coercive police conduct is a necessary predicate to finding that a confession is not voluntary under principles of due process.

Accordingly, after reviewing the totality of circumstances surrounding Defendant's confession, we hold that the circuit court did not err in concluding that Defendant's confession was inadmissible.

KLEIN, Justice, concurring.

The majority correctly affirms the circuit court's order of suppression. I concur separately because Bowe's statements were inadmissible pursuant to Hawai'i Revised Statutes (HRS) § 621-26 (1985), and the constitutional issues need not have been reached. As stated in *State v. Kam*, 68 Haw. 631, 726 P.2d 263 (1986), "[i]t is axiomatic that appellate courts should pass upon constitutional issues only where the case is such that a decision of such issues is unavoidable." 68 Haw. at 635, 726 P.2d at 266. In the instant case, HRS § 621-26 provides an independent statutory basis for excluding Bowe's statement, and it was on that basis that the circuit court ruled below.

HRS § 621-26 provides that "[n]o confession shall be received in evidence unless it is first made to appear to the judge before whom the case is being tried that the confession was in fact voluntarily made." Although *State v. White*, 1 Haw.App. 221, 617 P.2d 98 (1980), implied that this statutory provision was merely a codification of the United States Supreme Court's decision in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), an examination of the history of HRS § 621-26 reveals that the precise language contained in the current version of the statute predated *Jackson* by some 37 years. *See* Act 204, § 1, 1927 Haw. Sess.Laws 207.

In addition, HRS § 621-26 is contained in Title 33, Chapter 621 of the HRS; Title 33 deals generally with evidence and Chapter 621 is entitled "Evidence and Witnesses, Generally." Thus, although HRS § 621-26 is not a part of the Hawai'i Rules of Evidence, it is clearly evidentiary. In interpreting this evidentiary law, this court has held that "[i]ncriminating statements, to be admissible in evidence, must be voluntary. The adverb 'voluntarily' as applied to the admissibility in evidence of extrajudicial confessions has been construed by this court [1] as inclusive of the several tests prescribed by the leading authorities on evidence.[2]" *Territory v. Young*, 37 Haw. 189, 192 (1945) (footnotes renumbered). The reliance on the "leading authorities" demonstrates that HRS § 621-26 was essentially a codification of the common law rule against coerced confessions. *Cf. State v. Foster*, 303 Or. 518, 525, 739 P.2d 1032, 1036 (1987) (noting that Oregon statutory provision "is an expression of the common law rule against coerced confessions"). The common law rule "would prohibit the admission in evidence of any out-of-court confession or admission of defendant made to the police during interrogation prior to the commencement of judicial proceedings if the statements were made under the influence of fear produced by threats, or of promises, *made by anyone*." *Foster*, 303 Or. at 525, 739 P.2d at 1036 (footnote omitted and emphasis added). *See also* 2 Wharton, Criminal Evidence § 637 (11 ed. 1935) (inducements made by private parties can render a confession involuntary).

According to the undisputed findings of fact, Wallace told Bowe that "he had to go down to the Honolulu Police Department ... [and] that Wallace would accompany him [there] in place of an attorney." Furthermore, Wallace "instructed [Bowe] to make a statement." Because Wallace "had the authority to suspend athletes or remove them from the Basketball Team and, in the case of scholarship-athletes [such as Bowe], to initiate procedures to withdraw their athletic-scholarships," Bowe "believed that he could not refuse to follow Wallace's directions." Thus, it is apparent that Wallace did not

---

1.  *King v. Marks and Butler*, 1 Haw. 81 [(1851)]; *The King v. Paakaula and Kahauliko*, 3 Haw. 30 [(1867)]; *Ter. Haw. v. Matsumoto*, 16 Haw. 267 [(1904)]; *Territory v. Chung Nung*, 21 Haw. 214 [(1912)]; *Ter. v. Fukunaga*, 30 Haw. 697 [(1929)].

2.  1 Greenleaf, Evidence (16 ed.) § 219a, p. 354; 2 Wharton, Criminal Evidence (11 ed.) § 591 *et seq.*, p. 978 *et seq.*; 3 Wigmore, Evidence (3d ed.) § 821 *et seq.*, p. 238 *et seq.*

simply advise Bowe to make a statement, but took control of the situation by directing Bowe to go to police station, accompanying him there, and specifically instructing him to make a statement. These facts indicate that Bowe's statements were not "in fact voluntarily made," but were made under the implied threat of sanctions from Wallace.

The prosecution failed to demonstrate that Bowe's statements were voluntarily made and, therefore, the statements were inadmissible pursuant to HRS § 621–26. Because the circuit court correctly suppressed Bowe's statements based on HRS § 621–26, we need not—and should not—address the constitutional issues.

NAKAYAMA, Justice, concurring.

I concur in the majority's judgment affirming the trial court's order suppressing Bowe's statement to Sergeant Pinero. Like Justice Klein, I do not join in the majority's opinion but concur separately because I believe that the trial court correctly ruled that Bowe's statement was inadmissible under Hawai'i Revised Statutes (HRS) § 621–26 (1985). Because we can affirm on that basis alone and because the trial court did not base its ruling on either the Hawai'i or United States Constitutions, it is unnecessary and therefore inappropriate to reach the constitutional issues addressed by the majority. *See State v. Kam*, 68 Haw. 631, 635, 726 P.2d 263, 266 (1986); *State v. Lo*, 66 Haw. 653, 657, 675 P.2d 754, 757 (1983).

Although I agree with Justice Klein's analysis of HRS § 621–26 and its applicability in this case, I write separately to explain why I feel constrained to conclude that Bowe's statement was not "voluntarily made." HRS § 621–26.

To begin with, the State does not assign as error any of the trial court's findings of fact (FOF). In particular, the State does not challenge the trial court's findings that:

[FOF] 3. Wallace, as head basketball coach, had the authority to suspend athletes or remove them from the Basketball Team and, in the case of scholarship-athletes, to initiate procedures to withdraw their athletic scholarships.

[FOF] 4. Defendant TROY BOWE was a scholarship-athlete on the Basketball Team.

[FOF] 8. Wallace ... informed [Bowe] that he had to go down to the Honolulu Police Department to meet with Sergeant Pinero.

[FOF] 9. Wallace informed Defendant TROY BOWE that Wallace would accompany him to the Honolulu Police Department in place of an attorney and instructed Defendant TROY BOWE to make a statement to Sargeant [sic] Pinero.

[FOF] 10. Wallace did not inform Defendant TROY BOWE that he could or should have an attorney present with him when he went to be interviewed by Sargeant [sic] Pinero.

[FOF] 11. Defendant TROY BOWE believed that he could not refuse to follow Wallace's directions because if he did so Wallace could suspend him from the Basketball Team or institute procedures to revoke Defendant TROY BOWE'S athletic-scholarship [sic].

Because the State has not assigned these FOFs as points of error on appeal,[1] we are bound to take them as conceded. *See* Hawai'i Rules of Appellate Procedure 28(b)(4) (1993). In my view, the undisputed FOFs support only one conclusion—that Bowe's statement was not voluntarily made. Thus, the State's failure to challenge any of the FOFs constrains me to affirm the trial court's conclusion of law that Bowe's statement was not "voluntarily made" and therefore inadmissible under HRS § 621–26.

Even if the State had properly put at issue the relevant FOF, I could not conclude that they are clearly erroneous. That is not to

---

1. In its opening brief, the State simply takes the position that Bowe's " 'fear' of being suspended from the basketball team if he failed to follow the coach's direction to make a statement has no legal consequence in determining the voluntariness of his confession." The State further asserts that "the disciplinary power of the basketball coach has no legal consequence in the determination of whether a confession has been made voluntarily and without any coercion from any law enforcement authority."

say that I do not have serious misgivings about the accuracy of several of the FOFs, most notably FOFs 9 and 11. Those FOFs were based on the testimony given by Wallace and Bowe at the suppression hearing. Based on my review of the transcript of the hearing, that testimony was of questionable credibility, having been given only after much prompting from Bowe's attorney on direct examination and in response to what can only be described as leading questions asked by the trial court.

I recognize, however, that an appellate court should " 'not pass on issues dependent upon credibility of witnesses ... [because] this is the province of the trial judge.' " *State v. Propios,* 76 Hawai'i 474, 879 P.2d

1057, 1065 (1994) (quoting *State v. Furutani,* 76 Hawai'i 172, 180, 873 P.2d 51, 59 (Sup. 1994)). That being so, I have little choice but to accept the trial court's decision to accept as true the testimony of Wallace and Bowe.

Therefore, given the state of the record before us, I am constrained to affirm the trial court's order of suppression.